## FINNEGAN v. UNITED STATES.
### No. 14573.

United States Court of Appeals
Eighth Circuit.

April 30, 1953.

Rehearing Denied May 28, 1953.

Morris A. Shenker, St. Louis, Mo. (Bernard J. Mellman and Thomas J. Guilfoil, St. Louis, Mo., on the brief), for appellant.

George L. Robertson, U. S. Atty., St. Louis, Mo., and James W. Knapp, Attorney, Department of Justice, Washington, D. C. (Warren Olney, III, Asst. Atty. Gen., and Tom DeWolfe and Robert H. Purl, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment following conviction on Counts I and II of an indictment consisting of five counts. Counts I, II and III charged the defendant with receiving compensation from certain named parties for appearing on behalf of the parties named before an agency or department of the United States Government, the defendant then being the duly appointed, qualified and acting Collector of Internal Revenue for the First Collection District of Missouri, and as such was an officer in the employ of the United States. Counts IV and V charged the defendant with bribery in his office as Collector of Internal Revenue. The indictment was drawn under Sections 281 and 202 of Title 18 United States Code.

On arraignment defendant pleaded not guilty and then filed motion to dismiss the indictment on the ground of misjoinder and he also filed motion to require the Government to elect on which count or counts of the indictment it would proceed. Both these motions were denied. Defendant then filed motion for an indefinite continuance on the ground that the great publicity given the matter of the charges embodied in the indictment by newspapers and magazines had so inflamed the public mind that he could not have a fair trial before a jury selected in the area from which jurors were to be selected. To this motion were attached as exhibits copies of various articles appearing in newspapers and in one magazine. It was not supported by affidavit nor was it argued by counsel for the defendant. This motion was denied and thereupon a jury was selected and the case proceeded to trial. The Government introduced evidence in support of the various counts of the indictment and the defendant in turn introduced evidence in opposition thereto. At the close of the case defendant moved for acquittal, which motion was denied, and the case was sent to the jury on instructions to which the defendant saved certain exceptions. The jury returned verdicts of guilty on Count I and Count II and verdicts of not guilty on Counts III, IV and V. From the judgment and sentence entered pursuant to the verdicts of guilty on Counts I and II defendant prosecutes this appeal.

The grounds on which defendant seeks reversal are substantially as follows: 1. The court erred in denying his preliminary motions: (a) To dismiss for misjoinder. (b) To require the government to elect upon which counts it would proceed, (c) To grant a continuance, and (d) In denying his motion for a Bill of Particulars; 2. The court erred in its rulings during the reception of evidence: (a) In permitting the government to offer evidence of other alleged offenses of the defendant. (b) In permitting the government to interrogate one of its own witnesses as a hostile witness. (c) In permitting in evidence government's Exhibits 27, 38, and 63, being private diaries. (d) In permitting the government to cross-examine defendant upon matters on which he had not been interrogated during his direct examination. (e) In permitting a government witness to testify as to what money had been paid to defendant as expense money for services "as a lawyer" during 1949 and 1950; 3. The court erred in overruling defendant's motion for judgment of acquittal interposed at the close of the government's evidence and renewed at the close of the entire case; 4. The court erred in its charge to the jury in expressing his opinion and commenting on portions of the evidence and on the credibility of certain witnesses, and in including in his charge instructions, copies of which had not previously been submitted to the defendant, and in failing

to instruct the jury that testimony of a witness given before the grand jury did not constitute substantive evidence; 5. The court erred in permitting the jury to consider government's Exhibits 14 and 79 which had not been received in evidence.

■■■ Defendant's motion to dismiss the indictment because of misjoinder of offenses and his motion to require the government to elect upon which counts of the indictment it would proceed may be considered together. The motion to dismiss for misjoinder need only be given passing notice. Defendant was not in any event entitled to a dismissal of the indictment because of misjoinder. Dowling v. United States, 5 Cir., 49 F.2d 1014; Culjak v. United States, 9 Cir., 53 F.2d 554, 82 A.L.R. 480. It is the contention of the government that the joinder of the five offenses in one indictment was proper under Rule 8(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. This rule reads in part as follows: "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The motion made before the trial began was not renewed at the close of the government's testimony nor at the close of the case. It is now urged that the testimony as to the several distinct offenses charged was such as to hamper and confound the defendant in his defense. A mere inspection or examination of the indictment would not, we think, disclose that such might reasonably be expected to result. If, however, the defendant felt that the testimony was such as to prejudice him in this regard, he should have renewed his motion either at the close of the government's evidence or at the close of the entire case. We have held that it may properly be interposed at the close of all the evidence. Bedell v. United States, 8 Cir., 78 F.2d 358. Having failed so to do, we think the contention cannot now be urged. It is however, contended that the counts could not properly be joined in one indictment because each charged a separate and distinct offense, unrelated to each other. However, distinct offenses may properly be joined if they are of the "same or similar character". Egan v. United States, 52 App.D.C. 384, 287 F. 958, 963. In the Egan case four counts were joined in one indictment alleging violation of the same federal statutes involved in the instant case. Defendant moved to require the government to elect as to the offenses on which it would proceed. The trial court denied the motion and on appeal the Court of Appeals for the District of Columbia among other things said, "The crimes defined in sections 113 and 117 belong to the same class, and may be separately charged in a single indictment. In such a case a general verdict of guilty on all the counts will be sustained in error, if any count is good and sufficient to support the judgment." All five of the offenses charged in this indictment were for violations of statutes designed to protect the government. The charge in each of the counts was the acceptance of money either for representing an interest adverse to the government or as a bribe to perform some act adverse to the interest of the government, the defendant being a trusted public official. All the offenses in effect charged a government official with taking the part of private interests in matters in which the government was a party. All of the counts involved directly or indirectly, the use of official position for the benefit of private interest for a pecuniary consideration.

■■■ It must be borne in mind that defendant was acquitted on counts III, IV, and V. But it is now contended that he was prejudiced by the admission of evidence on the counts on which he was acquitted. As has already been pointed out, he did not during the trial suggest by motion or otherwise that his trial on the five offenses would confound him in his defense. In these circumstances, we think there was no abuse of discretion by the trial court in overruling his motions. Apparently the jury had no difficulty in considering separately each of the offenses charged. Indeed, it was quite discriminat-

110

ing because it acquitted defendant on three of the counts. And no prejudice can be said to have resulted on the denial of defendant's motion to require the government to elect. Finally, it may be said that the fundamental principle underlying the practice of requiring the prosecution to choose between offenses or counts is the prevention of prejudice and embarrassment to the accused, and if the charges are of the same general character and are manifestly joined in one indictment in good faith, the government should not be required to elect upon which count or counts it will proceed to trial. We conclude that there was no abuse of discretion in denying defendant's motion to require the government to elect and no prejudice is shown to have resulted therefrom.

■■■ When this case was called for trial, defendant interposed a motion for continuance, and the denial of this motion is urged as error. The motion was unverified and requested an indefinite continuance based upon the charge that newspaper articles and one magazine article and the proceedings of the Congressional Committee and grand jury had given such widespread publicity to the charges contained in the indictment that he could not have a fair and impartial trial before a jury to be selected in the area within the influence of such publicity. There is no direct allegation ' of public prejudice against defendant. There were no affidavits of citizens indicating that there was any prejudice against defendant and a very careful and searching examination of individual jurors indicated but little knowledge on the part of the jurors with reference to publicity. Of the panel examined only 15 jurors had read the newspaper articles or heard the case discussed over the radio or otherwise. Three of the regular panel and two of the alternates were excused because they had formed an opinion as to the guilt or innocence of the defendant. The jurors selected were evenly divided between those who had previously read the newspaper accounts and those who had not. And each of those who had read or heard about the case testified that he had not formed nor expressed an opinion from what he had read or heard. The jurors were all carefully examined as to whether or not they had formed or expressed an opinion as to any of the issues involved and as to whether or not they had any prejudice and where any juror expressed any doubt on the question he was excused. The mere fact that a juror has read newspaper accounts relative to a criminal charge is not in itself sufficient grounds for excusing a juror. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; United States v. Moran, 2 Cir., 194 F.2d 623. In the instant case, no challenge of any juror was denied. They were repeatedly instructed to perform their duty conscientiously, honestly, fairly, and impartially. There is no showing that defendant was prejudiced by the denial of an indefinite continuance and in the absence of such a showing there should be no reversal. Centoni v. United States, 9 Cir., 69 F.2d 624; Hart v. United States, 5 Cir., 112 F.2d 128. The mere showing that great publicity had been given the matter of the charges against defendant was certainly not sufficient to warrant this court in reversing the case on the ground of the denial of defendant's motion for continuance. Allen v. United States, 7 Cir., 4 F. 2d 688; Shushan v. United States, 5 Cir., 117 F.2d 110; Paschen v. United States, 7 Cir., 70 F.2d 491. The jury selected acquitted defendant on three counts of the indictment, which tends to indicate that the jurors were not prejudiced against defendant and the verdicts have none of the earmarks of passion or prejudice. Finally, it may be said that newspaper publicity tending to excite public prejudice against a defendant is not usually considered as a sufficient reason for granting an application for continuance. It is to be noted in passing that there was no application for a change of venue, which is usually considered the correct remedy in such situations. We conclude that there was no error in denying defendant's motion for a continuance.

■■■ The application for a Bill of Particulars is addressed to the judicial discretion of the court and the denial of such motion is not reviewable in the absence of

an abuse of discretion. Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799; Knauer v. United States, 8 Cir., 237 F. 8; Sawyer v. United States, 8 Cir., 89 F.2d 139. We think there was no manifest abuse of discretion in denying appellant's motion for a Bill of Particulars.

■ It is urged that the court erred in permitting evidence as to other offenses. This contention is predicated upon the action of the court in permitting defendant's witness Abramovitz and the defendant himself to be interrogated on cross-examination. The objection as to the question propounded to witness Abramovitz was not, however, on the ground that the testimony sought to be elicited constituted evidence of other offenses, but that it was not proper cross-examination. The witness was interrogated as follows:

"Now you had conferences with Mr. Finnegan about your own tax liability or problem or transaction with the United States government?

"Mr. Blanton: Your Honor, I did not go into that matter with the witness. If he wants to make him his own witness—that is out of order at this time."

The witness finally answered but at no time, either by objection or by motion to strike, was any question raised as to the testimony called for being evidence in proof of other offenses. The testimony elicited had a bearing on the relation of the parties and the credibility of the witness and the weight to be given to his testimony and was a matter within the court's discretion. U. S. v. Manton, 2 Cir., 107 F.2d 834. As to the cross-examination of the defendant which is now claimed to have been objectionable because it tended to prove other offenses, the short answer would seem to be that not only was no such objection made to the testimony at the time of the trial, but no objection whatever was interposed. And the alleged error cannot for the first time be urged in this court.

■ It is next urged that the court erred in permitting one of the government's witnesses to be interrogated as a hostile witness. This witness had testified before the grand jury returning the indictment. The government attorney was of course familiar with that testimony. When interrogated on the trial however, his testimony was inconsistent, if not contradictory of his testimony given before the grand jury. He had refused to turn over to the government certain documents and checks prior to trial and at the time of trial, defendant was the witness's attorney. The court was of the view that his attitude on the witness stand was one of hostility. The government attorney was warranted in expecting this witness to testify the same as he had testified before the grand jury and we think the court properly allowed the witness to be interrogated as hostile. Ellis v. United States, 8 Cir., 138 F.2d 612.

Government's Exhibits 27, 38 and 63 were received in evidence over defendant's objection that proper foundation had not been laid for their reception in evidence and that they were hearsay. Exhibit 27 was a record of defendant's visit to the Department of Justice in September, 1949. It bore an official stamp, "Office File of the First Assistant, Lands Division." Foundation for its introduction was laid by the testimony of Rebecca C. Feller, the Department secretary who made the exhibit. It was part of a daily record kept by her and her predecessors over a long period. It was made by her in the ordinary course of official government business and it was the regular course of business to make and keep the record. It was used by her superiors on official business. Miss Feller testified that it was made by her from original notes made either by her or by another secretary in the office. It was made up not later than the morning after the original notes of visits were made and it was personally examined by the First Assistant before it was filed.

Exhibit 38 was a record showing defendant's visits and telephone calls to the St. Louis Office of the Reconstruction Finance Corporation. Foundation for its receipt in evidence was laid by the testimony of Mrs. Emily V. Helbach, secretary to the Office Manager, pursuant to his instructions. The record was kept in substantially the

same manner as was Exhibit 27. It was made in due course of official business of the office and Mrs. Helbach had a personal recollection of some of defendant's visits. The manager testified that the record was not a private diary but was made so that a complete record of callers would be available and that he frequently checked its accuracy and it was the customary and routine practice to make and keep such a record.

Exhibit 63 consisted of shorthand notes showing defendant's visits to William E. Willett, Director of the Reconstruction Finance Corporation. The notes were made and kept by Mildred S. Stevens, Willett's secretary. They were made at the time of defendant's visits in accordance with the customary practice and routine of the office. It was the regular course of government business to make and keep these records and they were made by the witness in the regular course of that business. They were used by Mr. Willett and Mrs. Stevens and also by their co-workers and they were also used for general reference by the Reconstruction Finance Corporation. Mr. Willett testified as to defendant's visits to his office on March 29th and April 30th, 1949, and as to the conversations they had about the American Lithofold Corporation loan on those occasions. Mr. Willett refreshed his recollection by reference to the notes as to the exact dates of the visits. It is to be observed that Frank Prince and another government witness also testified as to defendant's visits to the Reconstruction Finance Corporation, without using these notes.

Defendant contends that these exhibits were incompetent on the ground that they were hearsay and not binding upon him. Section 1732, Title 28 U.S.C., provides in part as follows:

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

\* \* \* \* \* \*

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

Section 1733, Title 28 U.S.C., provides in part as follows:

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept."

It has been held that the term "business" as used in the above quoted section applies to government agencies and if the records are kept as prescribed by the statute they are competent and admissible in evidence. Harper v. United States, 8 Cir., 143 F.2d 795; United States v. Quick, 3 Cir., 128 F.2d 832. We think the exhibits were properly admitted. It has been held that a memorandum of a telephone conversation between a defendant and a bank employee made in the routine of the regular course of the bank's business was admissible as a "business entry" under the Federal Statute. United States v. Moran, 2 Cir., 151 F.2d 661, 167 A.L.R. 403. See, also, United States v. General Motors Corporation, 7 Cir., 121 F.2d 376. It may be noted in passing that the exhibits were cumulative as there was direct evidence as to the matters described by the exhibits. Their admission could therefore not properly be held to be prejudicial even if erroneous. Coplin v. United States, 9 Cir., 88 F.2d 652; Word v. United States, 10 Cir., 199 F.2d 625.

The defendant took the witness stand in his own behalf. It is urged that the court erred in the scope permitted in his cross-examination. He was cross-examined as to his connection with the American Lithofold Corporation, as to his visits at the office of the Reconstruction Finance

Corporation with respect to the American Lithofold Corporation's loan applications, and his contacts with the same agency on behalf of Karol Kell Company. On cross-examination he was asked about certain expense money he received from the American Lithofold Corporation in 1949. This was objected to as going to matters not covered in defendant's direct examination. Having taken the witness stand in his own behalf defendant was subject to the same rules as to cross-examination as any other witness. In his direct testimony he had related in some detail his services for the American Lithofold Corporation and R. J. Blauner and had said there was no agreement for compensation. He had also given an account of certain trips he had made to Washington, D. C., Chicago, Atlantic City and New York and the purported reasons therefor. This cross-examination had a bearing on the nature of his compensation for services and the amount of any expense money he had received. They were pertinent circumstances concerning which the government, we think, had a right to cross-examine. Branch v. United States, 84 U.S. App.D.C. 165, 171 F.2d 337. He was also cross-examined with reference to his visits to William E. Willett, a director of the Reconstruction Finance Corporation, on March 29, 1949, and August 30, 1949, and he was interrogated about the payment of his expenses on these occasions by the American Lithofold Corporation and his knowledge about the loan application of that company pending before the Reconstruction Finance Corporation at that time. He was also cross-examined about his visits to the office of Mr. Alexander in the St. Louis office of the Reconstruction Finance Corporation and his conversation on these occasions relative to the loan to American Lithofold Corporation. On direct examination he had testified in some detail about his services and connection with the American Lithofold Corporation and had stated that the compensation he received from that company was for three purposes, all unrelated to the charges against him. He had testified as to trips to Washington, D. C., as to financial transactions concerning payments he had received, and conferences and contacts which he had made on behalf of that company. The apparent purpose of this testimony was to leave the impression that the transactions to which he testified were the only ones he had had and through inference to create the impression that he had not appeared before the government agencies on behalf of the American Lithofold Corporation and that the payments he had received were for other services. The government, we think, had a right to show, if it could, on cross-examination that defendant had the opportunity to render services other than those mentioned on direct examination, as having a bearing on what services he was in fact compensated for. By his own testimony on direct examination he opened the door for this cross-examination. Having taken the witness stand in his own behalf, he waived his constitutional privilege of silence and the government had the right to cross-examine him upon his testimony in chief with the same latitude that would be permissible in the case of an ordinary witness. Sawyer v. United States, 202 U.S. 150, 26 S.Ct. 575, 50 L.Ed. 972. He could not claim as a witness the privileges which belonged to him solely as the accused. We think the cross-examination did not go beyond the scope of the field entered by the defendant on direct examination and the government had the right fully to exploit that field.

The witness Homer W. Stanhope testified both for the government and for the defendant. He was asked to state the total amount of expense money paid to defendant for his services as an attorney during the years 1949 and 1950 and the total amount he was paid as fees for legal services in 1950. The objection was a general one to the effect that it was incompetent, irrelevant and immaterial and entirely prejudicial. The witness was the Comptroller of American Lithofold Corporation, with authority to make disbursements. The question did not call for the opinion of the witness and it was not objected to on that specific ground and the contention is, we think, wholly without merit. Johnston v. United States, 9 Cir., 22 F.2d 1; United States v. Samuel Dunkel & Co., 2 Cir., 184 F.2d 894. Certainly the Government was

entitled to show the entire amount defendant received as expenses and fees for legal services so that the jury might be able to compare the amount so received with the total services performed and thus decide whether or not the services charged in the indictment and shown by Government evidence had been performed for compensation. We think the evidence had substantial probative value and it was for the jury to determine what weight or consideration should be given to it.

At the close of the case defendant moved for judgment of acquittal and the refusal of his motion is here urged as error. As to the first and second counts of the indictment, which are the only counts now involved, defendant's motion specified that as to Count I no evidence had been offered tending to show that the defendant was paid $5,000.00 on or about March 14, 1949, for representing the Warwick Operating Company before either the United States Coast Guard, United States Treasury Department, or the United States Department of Justice. As to Count II, the motion specified that there was no substantial evidence to show that the defendant directly or indirectly received a check for the sum of $3,000.00 as compensation for appearing before the Reconstruction Finance Corporation, either in St. Louis, Missouri or Washington, D. C.

 So far as here pertinent, the statutory provision under which defendant was prosecuted provides as follows:

"Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, or the head of a department, or other officer or employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered; either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States." Section 281, Title 18, U.S.C. As the government was the prevailing party, in considering the question of the sufficiency of the evidence to go to the jury and to sustain the verdict, we must view it in a light most favorable to the government and we must consider as proved all facts which the evidence reasonably tended to prove. Walker v. U. S., 8 Cir., 93 F.2d 383; Galatas v. U. S., 8 Cir., 80 F.2d 15; Klein v. U. S., 8 Cir., 176 F.2d 184; Myres v. U. S., 8 Cir., 174 F.2d 329; Peters v. U. S., 8 Cir., 160 F.2d 319. It is not the province of this court to weigh the evidence nor to determine where the preponderance may lie, but only to determine whether there was substantial evidence to sustain the jury's verdict. Counsel for defendant goes far afield and argues the evidence on the apparent theory that the case is here triable de novo. It is strenuously urged that the guilt of the defendant rests solely on circumstantial evidence, and accordingly the rule requiring that the circumstances be not only consistent with the guilt of defendant but be inconsistent with any other reasonable theory than that of guilt and that if the circumstances are as consistent with his innocence as with his guilt, the motion for judgment of acquittal should have been granted. The rule, however, is applicable only where the evidence is wholly circumstantial and if there is any direct evidence in the case for the government which would be sufficient if believed by the jury to show defendant's guilt, then the rule as to circumstantial evidence may not be invoked. Underhill's Criminal Evidence, Section 19. We have considered the evidence with great care having in mind the applicability of the rule governing circumstantial evidence. A detailed recital of the evidence in this regard would serve no useful purpose and would unduly extend this opinion. There was direct evidence if believed by the jury, sufficient in our judgment to prove the guilt of the defendant beyond a reasonable doubt. This is particularly true with regard to the evi-

dence supporting Count II. That count is abundantly sustained by both direct and circumstantial evidence. The sentences imposed run concurrently and hence no prejudice could result even if the rule were applicable to Count I, which we think it is not. We conclude that there was no error in denying defendant's motion for acquittal.

It is urged that the court erred in its instructions to the jury. The argument of counsel as to this issue goes far beyond the exceptions taken at the trial. The only exceptions taken were as follows:

"Mr. Blanton: In your Honor's charge you commented on the testimony of the witness Lichtenfeld as being that of a hostile and adverse witness, and commented on the evidence that he gave before the Grand Jury. We request the court to charge the jury that the sole purpose for which that testimony before the Grand Jury is admissible is to explain the reason why the government put him on the stand and that such testimony before the Grand Jury cannot be considered by the jury as substantive testimony.

"The second matter we want to call to your Honor's attention is that we except to the comment of the court pointing out that certain portions of the charge were given at the request of the defendant, both when you started such charge and secondly when you concluded it, as to both first three counts and then again as to the fourth and fifth counts, and we request the court to charge the jury specifically that the portion of the charge, although given at the request of the defendant, is just as binding on him as any other portion of the charge." It is observed that the court was requested to charge the jury that the sole purpose for which the testimony of witness Lichtenfeld given before the grand jury was admissible was to explain the reason why the government put him on the witness stand and that his testimony before the grand jury could not be considered by the jury as substantive testimony. We think the objection without merit because the witness testified that the testimony he had given before the grand jury was true. It thereby became substantive evidence.

DiCarlo v. U. S., 2 Cir., 6 F.2d 364; Harman v. U. S., 4 Cir., 199 F.2d 34; Zimberg v. U. S., 1 Cir., 142 F.2d 132; Curtis v. U. S., 10 Cir., 67 F.2d 943; Craig v. U. S., 9 Cir., 81 F.2d 816; Stewart v. Baltimore & O. R. Co., 2 Cir., 137 F.2d 527. The other exception went to the action of the court in stating that certain instructions were given at the request of defendant. In response to this exception, the court instructed the jury as follows:

"Members of the jury, you recall during the charge I referred on two occasions, 'I now am giving you the following part of this charge at the request of the defendant,' and then when I conclude it I will say that 'this concludes the portion of the charge which the defendant has requested'.

"Now the portion of the charge I give you at the request of the defendant is just as much a part of my charge as if it had originated with me and just as binding on you." This clearly covered the objection and cured any possible error in the instruction. To be available on appeal, an exception to an instruction must have been taken in the lower court so that the court might, if the objection seemed well taken, cure any error. Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447; Palmer v. Miller, 8 Cir., 145 F.2d 926. We therefore decline to consider the various objections now urged that were not presented to the trial court.

It is finally urged that the defendant was prejudiced by the fact that certain exhibits known in the record as Exhibits 14 and 79, which had not been received in evidence, were permitted to go to the jury. The question was raised on motion for new trial. The motion was not only entertained but this specific question was considered by the court and passed upon adversely to the defendant. The ruling of the court on motion for new trial is not ordinarily reviewable on appeal if the court entertained the motion and its decision thereon is not manifestly an abuse of discretion. Taylor v. U. S., 8 Cir., 19 F.2d 813; Ryan v. U. S., 8 Cir., 283 F. 975. In the instant case, the court gave careful consideration to the motion and denied it on three grounds: (1) That defendant's

attorneys who were present at the time the exhibits were sent to the jury were under a duty to examine them and failed to object to the submission of the documents to the jury; (2) That the matters contained in the documents were cumulative to other evidence which the jury had heard and were not prejudicial; and, (3) That neither of the two exhibits pertained to Count II as to which defendant was convicted and his sentences on Counts I and II were concurrent, and that at least one of the documents would have been admissible if the government had offered it after cross-examination of the defendant.

■ It is observed too that the court in its instructions to the jury told them that, "There have been a large number of exhibits offered in this case. If you desire them during your deliberations, give a note to that effect to the marshal or bailiff, who will be outside your door, and they will be furnished to you." Defendant's counsel had notice that it was the purpose of the court to send all exhibits to the jury and no objections were made. Subsequently, pursuant to these instructions, the jury sent a note to the court and then in the presence of counsel for defendant the exhibits were sent to the jury. The exhibits which had not been received in evidence were identified as exhibits and were offered, but an objection to their admission was sustained so that counsel for defendant knew of these exhibits. There was no showing that the jury in fact examined these exhibits and there is no evidence indicating that defendant was prejudiced by their having been placed in the hands of the jury. We have considered all other contentions made by defendant and find them wholly without merit.

We have carefully considered the entire record. Defendant was represented by able counsel, both in the trial court and in this court. He was tried by a jury which acquitted him on three counts of the indictment which indicated, we think, that it was a fair jury, and he was accorded a fair trial by the trial judge. Finding no prejudicial error in the record, the judgment appealed from is affirmed.