Joseph **ZAMMAR**, Appellant,

v.

**UNITED STATES of America,**
Appellee (two cases).

**Nos. 15099, 15100.**

United States Court of Appeals
Eighth Circuit.

Dec. 15, 1954.

Rehearing Denied Feb. 9, 1955.

**224**

John T. Barker, Kansas City, Mo., for appellant.

Paul R. Shy, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from the judgments against defendant (appellant) in No. 15,099 on the charge of illegal sale and transfer of heroin hydrochloride in violation of section 2554(a), Title 26, United States Code; and in No. 15,100 on two counts, the first count charging transportation, concealment and sale of heroin in violation of section 174, Title 21, United States Code, and the second count charging purchase of heroin in violation of section 2553(a), Title 26, United States Code. The two cases were consolidated for trial. The jury found the defendant guilty on each of the three charges. He was sentenced to two years and six months and fined $100 on each charge, all prison sentences to run concurrently.

All charges arise out of transactions occurring on February 5, 1954. Two narcotic agents testified that on said date they called on Evelyn Alcott, a narcotic addict, at her apartment at 633 East 66th Street Terrace, Kansas City, Missouri, and induced her to obtain heroin for them. About 10:30 A. M. she put in a call to Joe and asked for "junk." The witnesses stated that in the narcotic world "junk" means heroin. The agents gave Miss Alcott $35 to pay for the heroin. The money was not marked. There is no proof that the money was paid to the defendant. The party whom the two agents identified as the defendant Joe Zammar arrived at the Alcott apartment about 11:15 A. M. He gave Miss Alcott a brown package and a hypodermic syringe and needle and went into the bathroom with her, leaving the door open. The girl took an injection of heroin with the defendant's assistance. The agents took possession of the brown package and the balance of its contents which was analyzed and found to contain heroin. Zammar left about 11:40 A. M. He came by car bearing Missouri license number Y46–107. Zammar was arrested on a warrant at his home about 3 A. M. on February 7, 1954. A search was then made of his person and his room. No heroin was found. Agent Heisig testified that defendant said at the time of his arrest, "I knew that girl would get me in trouble."

Defendant to establish an alibi offered five witnesses whose testimony at least tended to show defendant was at his office in the Scarritt Building some five or six miles from Miss Alcott's apartment at the time the agents testified defendant was at the Alcott apartment making the delivery. Defendant also showed that the agents were likely in error as to the telephone number Miss Alcott called.

The defendant moved for acquittal at the close of plaintiff's evidence and at the close of all the evidence. The overruling of these motions is asserted as error in the statement of points relied on filed in the District Court, but this proposition does not clearly appear to be argued on this appeal, except so far as it is included in defendant's contentions that this is a clear case of mistaken identity, and that, as Miss Alcott was not offered as a witness, the court must assume she would not have identified the defendant.

■ It is a well established principle that after a verdict of guilty, in considering the sufficiency of the evidence to sustain a verdict, the appellate court will consider the evidence in the light most favorable to the Government, and will consider as proved all facts which the evidence reasonably tends to prove. Nilva v. United States, 8 Cir., 212 F.2d 115; Finnegan v. United States, 8 Cir., 204 F.2d 105.

■ Defendant cites numerous examples of conviction of innocent persons through mistaken identity, many of them coming from Professor Borchard's book "Convicting the Innocent." Unfortunately, there have been instances where innocent persons have been convicted as the result of mistaken identity. However, each case must be decided on its own facts. The question of identification of the defendant was clearly for the jury. There was evidence in the record to support the verdict. It is not the province of this court to weigh the evidence and determine where the preponderance may be.

■ Five witnesses were used by the defendant to establish his alibi. They were all respectable witnesses and testified that they saw defendant in his office or talked to him by telephone there on the morning of February 5, 1954. Roberts and Reece talked to defendant by telephone, Roberts saying his call was after 11:00 and before 12:00 and Reece stating he called between 10:00 and 11:00. The Alcott home is five or six miles from defendant's office. The jury could have found that the calls were made around 11:00 and that it was possible for the defendant to get to the Alcot home at approximately 11:15. Mrs. Tracy, with whom defendant shared the office, said the defendant was in his office upon her arrival about 10:30. This, under the record, is not inconsistent with the officers' testimony. Mrs. Tracy did not testify the defendant did not leave his office. Fowler, a parking lot attendant, at first was not even certain as to the day defendant came to his lot to pick up a record player, but upon recall fixed the time at 12 noon on February 5. The jury could find that it would have been possible for the defendant to have reached the parking lot from the Alcott apartment at approximately noon. The sharpest conflict is created by Mr. Tracy's testimony which fixes his time of arrival at his office at 11:30 or 11:40, based on having come directly from the airport and supported by the airline report of the time of take-off of a plane. Mr. Tracy testified that defendant was in the office upon his arrival. Any discrepancy in time here is not great. At times there are variances in watches, and it would be possible for the jury to infer that either one party or the other was slightly off on time. All alibi witnesses testified over three months after February 5. There was no particular reason at the time for fixing the exact moment of their transactions with the defendant. Some of them were accustomed to seeing the defendant daily. It is possible that they were not in a position to fix the exact time of their contact with the defendant. If the jury concluded that the facts testified to by each set of witnesses were inconsistent, it was its function to determine which witnesses were telling the truth. In any event, the jury by its verdict has accepted the testimony of the narcotic agents as correct and under this record we can not say as a matter of law that such a conclusion was not warranted by the evidence.

■ The defendant complains that Miss Alcott was not called as a Govern-

ment witness, and contends that because she was not called her testimony must be presumed to be unfavorable to the Government. It appears from the record that Miss Alcott was a convicted narcotic addict. She was in the courtroom all during the trial. In connection with the discussion of exceptions to instructions, the trial court said:

"The court is going to say in that connection that certainly the witness Alcott was as much available to the defendant as she was to the Government."

There is nothing in the record to refute this statement. In Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, 31, the court, in discussing the necessity of using witnesses, states:

"Objection is made, on behalf of the appellant, that the Government failed to call some witnesses who might have given admissible evidence. Assuming their availability and the competency and materiality of their testimony, still no error is shown, in the absence of a showing that evidence material to appellant's defense was suppressed. It is necessary in the prosecution of a case that evidence and witnesses be sifted and selected with a view to economy of trial-time and the better understanding of the case by the jury. No useful purpose is served by using a scattergun.

"The Government sustains its burden when it presents evidence sufficient to establish the guilt of the accused. This varies with each case, the nature of the accusation, and the defenses advanced by the accused. Process was available to appellant to call additional witnesses if he wished to do so. Skilled lawyers, advised by their clients, make their decisions upon these questions, in view of their familiarity with the facts and the law. It is not the function of appellate courts to retry cases upon the intangibles involved in evidence which might have been,

but was not, introduced at the trial."

In Miller v. United States, 7 Cir., 53 F.2d 316, 317, the court said:

"There was clearly no error on the part of the court on account of the government not calling the taxi driver and another woman as witnesses. Appellant made no request for the court to call witnesses, and of course there was no duty resting upon the government to call them for her."

Under the record in this case there was no duty on the part of the Government to call Miss Alcott as a witness. If the defendant had desired to use her testimony, she was available and could have been called.

■■■ Defendant, in his brief, objects to the part of the Court's instructions reading as follows:

"Gentlemen, I make this statement to you, it is not binding on you, but either the two Government agents in this case, the narcotic agents, are deliberately committing perjury, have deliberately committed perjury and have started out to frame this defendant or the other witnesses' memories are bad or they are mistaken, one or the other. I think that is perfectly obvious and cannot be denied. Either Zammar was there and in the presence of these narcotic agents or he wasn't. They say he was positively, that they had these dealings and transactions with him. Now, if that isn't true, they are deliberately committing perjury. That is for you to say, whether they are in the performance of their duties or whether these other people are mistaken. Nobody is charging them with being guilty of perjury. Now, that is the issue for this jury to determine."

Defendant states in his brief that by the foregoing instruction the court was saying that the two officers would be prosecuted for perjury if defendant was ac-

quitted, but that defendant's witnesses would not be prosecuted for perjury if defendant was convicted, and that the instruction practically amounted to telling the jury to believe the Government officers and not to believe defendant's witnesses.

We have been unable to discover where the defendant made any exception to this instruction in the court below upon the ground he now urges. He makes no reference to any exception in his brief, and a careful search of the record and transcript fails to disclose any such exception. The trial court is entitled to have an opportunity to pass upon any objection lodged to his instructions, so that he may correct any possible error. In Finnegan v. United States, supra, this court said, 204 F.2d at page 115:

> "To be available on appeal, an exception to an instruction must have been taken in the lower court so that the court might, if the objection seemed well taken, cure any error. Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447; Palmer v. Miller, 8 Cir., 145 F.2d 926. We therefore decline to consider the various objections now urged that were not presented to the trial court."

As the objection now urged to the quoted instruction was not raised in the trial court, we can not consider it.

 For his final ground for reversal defendant states:

> "The evidence showing a raid on the residence of defendant at three o'clock in the morning by a raiding squad without a search warrant, was highly prejudicial to the rights of the defendant. No narcotics were found but the damage was done. The court condemned it."

Appellee, in replying to the urged error, states that it finds it difficult to ascertain just what rights were violated by the search. We too have difficulty in determining what appellant is urging. The defendant was arrested under a legally issued warant at 3 A. M. on February 7. The arresting officers searched defendant and his room. The trial court held that the search in connection with the arrest was lawful, but criticized the officers for the hour they chose to make the arrest. The matter of arrest and search was brought into the record by the defendant. The search produced no evidence useful to the prosecution. A reasonable search in connection with lawful arrest is proper. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. No prejudicial error has been either alleged or proven in connection with defendant's arrest and the related search.

 We have now carefully considered the record and all errors relied upon for reversal. The verdict of the jury is supported by substantial evidence. We find no prejudicial error. Accordingly, the judgments appealed from are affirmed.