**UNITED STATES of America, Appellee,**

v.

**Steven L. THORNBERG, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Steven H. OLSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**James E. THORNBERG, Appellant.**

**Nos. 87–5089 to 87–5091.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1987.

Decided April 20, 1988.

Rehearing Denied in No. 87–5089
May 16, 1988.

Terrence J. Fleming, Scott Tilsen, Jonathan E. Fruchtman, Minneapolis, Minn., for appellants.

Donald M. Lewis, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before ARNOLD, FAGG, and BEAM, Circuit Judges.

ARNOLD, Circuit Judge.

This is a prosecution for mail fraud. The government alleged that between January 1980 and December 1984 the defendants, as owners and officers of several different companies, carried out a scheme to defraud the companies' creditors and customers. Generally, the indictment charged that the defendants' companies, which sold grain-processing equipment, would buy their inventory and advertising on credit, without intending to pay for them, and then would sell the equipment to customers, requiring payment in cash before delivery. Much of the merchandise would be delivered late or in bad condition. As part of the scheme, when disgruntled creditors and customers made complaints or threats, the defendants would stave them off either by falsely promising to rectify the problem or by threatening them with legal action for interfering with business relations or reputation. When the heat on a particular company got too great, the defendants would seek bankruptcy protection, or otherwise cease doing business as that company, and incorporate a new company to repeat the cycle.

The defendants were tried jointly, and the trial took 20 days over a two-month period. The jury convicted Jim Thornberg on 17 of 26 counts, Steve Olson on 21 of 27 counts, and Steve Thornberg (Jim's brother) on four of ten counts. The major issue before us, which all three defendants press, is whether the trial should have been sev-

ered. In addition, Jim Thornberg argues that the District Court [1] erred in refusing to exclude certain evidence as a sanction for the government's violation of Fed.R. Crim.P. 16, and Steve Thornberg argues that the evidence was insufficient to support his guilty verdicts, that the Court erred in excluding the testimony of one of his witnesses, that one of his proposed jury instructions should have been submitted, and that he suffered prejudicial preindictment delay. We affirm the judgments in all respects.

## I.

We turn first to the severance issue.[2] The most crucial aspect of this claim is whether the defendants properly preserved this issue for appellate review. The answer to this question will determine the standard of review we will apply. If the issue was preserved, our review is for abuse of discretion in applying the standard of Fed.R.Crim.P. 14, which states in part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The showing of prejudice necessary to succeed on an appeal under this Rule is a showing that the joinder adversely affected the substantial rights of the complaining party. *United States v. Bostic,* 713 F.2d 401 (8th Cir.1983). On the other hand, if the issue was not preserved, we review for plain error. This requires appellants to show not only that there was a Rule 14 violation affecting their substantial rights, but also that there is some extraordinary reason for us to reverse for such error despite their failure to raise the issue in the

trial court. For a discussion of the factors involved in noticing plain error in criminal cases, see *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1986). See also Fed.R.Crim.P. 52(b) ("Plain errors ... affecting substantial rights *may* be noticed....") (emphasis supplied).

### A.

■ In general, preserving an issue is a matter of making a timely objection to the trial court and clearly stating the grounds for the objection, so that the trial court has an opportunity to prevent or correct the error in the first instance. See, *e.g.,* Fed.R. Evid. 103(a). Unless the issue was brought to the attention of the trial court in this manner, we are loath to reverse, even if there is error, for at least two reasons. First, as a practical matter, without a timely objection a reviewing court cannot know whether the appellant knew of the error at the time it was made, but decided nevertheless to accept the ruling in the hope that it would not harm his case. Thus the reviewing court cannot be sure that the appellant did not consent to the error. Second, in most cases it is simply unfair to reverse a trial court on the basis of an issue that it has not had an opportunity to consider. In our adversarial system, so long as the proceeding is conducted within the bounds of fundamental fairness, it is not the duty of the trial court to anticipate and evaluate every possible error that might be alleged. Rather, it is the role of counsel to bring such matters to the court's attention.

Preserving the issue of refusal to sever is a bit more complicated. Federal R.Crim.P. 12(b)(5) requires that a motion to sever be made before trial, and failure to do so then results in a waiver of the objection, unless cause is shown. Fed.R.Crim.P. 12(f). Each of the defendants here complied with this Rule. In addition, our cases have stated that, even though a pretrial

---

1. The Hon. Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. It is also argued that the joinder of all three defendants in the indictment was error. We reject this argument, for it is clear on the face of the indictment that all of the defendants were

named in Count I as having been involved in a single fraudulent scheme embracing all of the alleged illegal acts described in the remaining counts. This is all that is necessary for proper joinder of defendants. Fed.R.Crim.P. 8(b).

motion to sever is denied, the objection is not preserved unless the motion is renewed at the end of the government's case or at the end of all the evidence.[3] *E.g., United States v. Shearer,* 606 F.2d 819, 821 (8th Cir.1979). It is undisputed in this case that none of the defendants renewed the severance motion at the end of the government's case or at the close of all the evidence, and the government therefore argues that the issue was not preserved and we should review for plain error only.

We do not agree with the broad stroke of the government's argument. Like all procedural rules, our rule on preserving a motion to sever must be applied in light of these purposes; it cannot stand as a monolith, an end in itself. It has no life apart from the reasons for which it exists. Thus we turn to the specific severance motions made by each appellant, and view them against the backdrop we have discussed, to determine whether they have been properly preserved.

1. Jim Thornberg based his pretrial motion for severance on the ground, among others, that Steve Olson would present a defense that would be inconsistent with his own, *i.e.,* Jim would try to depict Olson as the dominant force in their companies, and the one responsible for the fraudulent activities, while Olson would present the same portrait of Jim. This motion was properly denied, as are most pretrial severance motions made on the ground that joinder *may* permit a parade of horribles at trial, because, at the pretrial stage, it usually is not certain that the anticipated horrible will come to pass. At the status conference just before trial, Jim renewed his severance motion on the ground that Steve Thornberg would also present an inconsistent defense, similar to Olson's. Sept. 4, 1986 Tr. at 12–13. The Court denied this motion also, commenting that there was "nothing different or new to change the circumstances ... with respect to the trial of the case...." *Id.* at 40. This ruling, we think, put Jim on notice that, if the circumstances did change, he should bring that change to the Court's attention.

During trial, both Steve Olson and Steve Thornberg put on evidence that Jim controlled their companies and was solely responsible for any fraud that may have occurred. This evidence was adduced during the government's case, by way of cross-examination of government witnesses, and during the defendants' cases. Jim never renewed his motion to sever.[4] Since Jim gave no indication that he thought this evidence warranted severance just before, or at any time after, it was actually introduced, we cannot be sure that he did not consent to it. Nor did the trial court have an opportunity to pass on the issue at a time when the alleged inconsistency of the defenses of Jim's codefendants became concrete. We therefore hold that Jim Thornberg did not preserve the severance issue. And, reviewing the issue thus presented, we do not find plain error. We do not think the District Court abused its discretion by refusing to sever his case, and, in any event, we do not find this to be the extraordinary case in which we would reverse despite the appellant's failure to

---

**3.** This rule derives from *Finnegan v. United States,* 204 F.2d 105 (8th Cir.), *cert. denied,* 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953). But the appellant in *Finnegan* had made no attempt to raise the severance issue in the trial court at any time after the start of trial. This case is different on its facts; as will be explained, both Steve Thornberg and Steve Olson moved for severance at different points during trial. Thus this case presents the question whether renewing a motion for severance during trial, but not at the precise points of the close of the prosecution's case or the close of all the evidence, is sufficient to preserve the motion for appeal. We have found no holding in this Circuit, or in the Supreme Court, on this issue.

**4.** Jim's lawyer argues that the parties agreed at trial that each defendant would get the benefit of every objection lodged by any defendant, and that he therefore preserved the severance issue based on Olson's and Steve Thornberg's objections, discussed *infra.* The government denied the existence of any such agreement. We have found an agreement in the record that each defendant would get the benefit of any defendant's objection on evidentiary matters, Tr. II:160, but this does not extend to severance motions. In fact, our review reveals that each defendant lodged his own severance objections. Thus we reject this claim.

preserve the point. See *United States v. Young, supra.*

■ 2. Steve Olson moved for severance in a pretrial motion, which was denied. He renewed it at the pretrial status conference, arguing that the jury would be unable to compartmentalize the evidence relating to him from that relating to the others. This was one of the grounds that he had raised in his pretrial motion, and the Court denied it at the status conference for the same reason it denied Jim's, because there had been no change in circumstances.

During trial, Olson renewed his severance motion on the ground that the admission of bankruptcy documents relating to one of the companies, which dated from a time before Olson was involved with that company, was prejudicial to him. The Court denied the severance. This motion went to the same issue he had raised in his pretrial motions, whether the jury could compartmentalize the evidence which did not relate to him. This showed that Olson did not abandon his pretrial objections on that ground and gave the Court an opportunity to pass on the issue at a time when it could properly assess the likely prejudice. Thus, even though the motion was not renewed at the end of the government's case or at the close of all the evidence, we find it properly preserved. But Olson never renewed his motion for severance on the other grounds he had raised before trial. Since we cannot know whether he abandoned those grounds and since the District Court had no opportunity during trial to rule on them, we hold that they were not preserved. Nor is there plain error on those grounds.

3. Steve Thornberg made a pretrial motion for severance and renewed it during the status conference immediately before trial. This motion was based on the ground that he was a peripheral defendant in the case and would be prejudiced by having to participate in a long joint trial when, if severed, his trial would take only three or four days. In addition, he argued that the case was inherently complicated and confusing, that Jim Thornberg and Steve Olson had used aliases in running the companies that would unfairly implicate him in the fraud, and that the jury would be confused by the fact that Steve Thornberg's name was a combination of the other two defendants' names. All of this, he argued, would make it impossible for the jury to segregate the evidence relating to him from that relating to the others.

These motions were denied, and on September 16, 1986, during the government's case, Steve Thornberg moved again for severance, this time because the Court had ruled that a prior inconsistent statement that he had introduced to impeach a witness, the import of which was that Olson and Jim had concealed a fraudulent transaction from him, could not be considered as substantive evidence. He claimed that this testimony would be admissible as substantive evidence if he were not being tried jointly with Jim and Olson, and this prejudice required severance. Tr. VI:809–10. The motion was denied.

■ Steve Thornberg made his final motion for severance on October 24, 1986. The trial had progressed through Jim Thornberg's defense; Steve Thornberg was in the middle of presenting his case; and Olson had not yet been able to present his. October 24th was a Friday; on the previous Tuesday, after the day's trial, Jim had taken an overdose of a tranquilizer and since had been confined in the psychiatric ward of a Minneapolis hospital. The trial had been in recess since Tuesday afternoon, and the parties had learned that the earliest date that Jim could be present at trial would be the next Tuesday. There were also concerns that he would not be mentally competent to stand trial. Steve Olson had moved for a mistrial as to him because of the prejudice caused by the delay. Steve Thornberg based his severance motion on the reasons that the trial had already taken seven weeks and that the evidence had been complex and confusing, both because of the nature of the fraudulent scheme and the similarity of his name to those of the two assertedly more culpable defendants. Any added delay would only compound the confusion and the prejudice, he argued, and he requested that his

trial be severed and resumed immediately. Tr. XX:3022–23.

This motion was denied, and the trial was put over until November 3, 1986. When trial resumed, Steve Thornberg put on the remainder of his case, which consisted of his own testimony, a short stipulation of the opinion of a handwriting expert, and very brief testimony from one other witness, who had previously testified for the government. Olson then put on three witnesses and a stipulation of the testimony of his handwriting expert, and then all the parties rested. Steve Thornberg argues that since his final renewal of the severance motion came so close to the end of the case, he properly preserved the issue despite his failure to renew it at the end of the government's case or at the close of the evidence. We need not rely on that argument, for we hold that he preserved the severance issue by renewing his motion at trial as he did. This gave the District Court the opportunity to rule on the question in its concrete form and demonstrates to us that Steve Thornberg never acquiesced in a joint trial. It would serve no useful purpose to refuse to consider his severance objections on appeal.

### B.

■ We turn then to the merits of the severance issues that Steve Olson and Steve Thornberg preserved. On the issue Olson preserved, whether the Court erred in denying severance on the basis that the jury could not properly segregate the evidence, we find no abuse of discretion. Olson does not point out any evidence that the jury could have considered against him that it should not have. At trial he unsuccessfully requested the Court to give a limiting instruction, which would have directed the jury not to consider certain evidence against him, at two points: during the testimony of a farmer who had bought equipment from Grain King Corporation, one of the defendants' companies, and when the prosecution introduced evidence relating to the bankruptcy of Steven Lloyd Corporation, another of the companies. We do not think this evidence was inadmis-

sible against Olson. The government introduced evidence tending to show that he was a decisionmaker and exercised some control at Grain King at the time of the transaction about which the farmer testified. Tr. V:640–75. Similarly, the evidence tended to show that Olson was responsible for the actions of Steven Lloyd Corporation that led up to its bankruptcy. This leaves Olson with the argument that severance was required because of the similarity of the defendants' names and because the jury could not keep up with what evidence related to whom over the two-month period that the trial took. We reject this argument. We are confident in the competence of juries to sort through factually complex and confusing cases in general, and that confidence is not shaken by the unfocused attack made here.

■ Steve Thornberg has preserved two grounds for appealing the severance issue: (1) the Court instructed the jury not to consider a particular statement as substantive evidence, and (2) the complex and confusing facts, the trial delays, and Steve Thornberg's peripheral involvement in the scheme made the joint trial too prejudicial. The first ground arose as follows. A former employee of Steven Lloyd Corporation testified at trial that he sold some of the company's steel as scrap metal, and that Olson told him not to tell Steve Thornberg about the sale. The witness was then impeached by a statement he had made earlier to the FBI, "that Steven Olson then told [the witness] not to tell Steve Thornberg because Steve Thornberg did not know what Steve Olson and Jim Thornberg were doing[.]" Tr. VI:827. Steve Thornberg argues that if his trial had been severed, this evidence would have been admissible as substantive evidence, and, assuming the earlier statement was made on pain of perjury, he is correct. But we do not think that this single statement, considered by the jury as substantive evidence, could create an appreciable chance that this defendant would be found guilty on fewer counts at a new trial. The statement has no direct bearing on the four counts on which Steve Thornberg was convicted. Thus this ruling

did not affect his substantial rights, and, if error, it is harmless.

Nor do we think the odds are more than negligible that Steve Thornberg would obtain a more favorable result in a retrial in which he would be the only defendant. He was acquitted on six of ten counts, and the other two defendants were convicted on those six counts. This indicates that the jury was able to compartmentalize the evidence relating to him. In addition, the Court gave limiting instructions after the testimony of 18 witnesses, stating that their evidence was not admissible against Steve Thornberg. We presume that the jury obeyed these limiting instructions, and this does much to reduce the prejudice against a defendant in a joint trial. See *United States v. Robinson*, 774 F.2d 261 (8th Cir.1985). Finally, the evidence against Steve Thornberg on the four counts on which he was convicted was more than sufficient, as we explain below, and this inclines us to think that he was not unfairly convicted for, or because of, his codefendants' deeds. Thus we find no error, nor any prejudice to his substantial rights, in this ruling.

## II.

■ Steve Thornberg attacks the sufficiency of the evidence supporting his convictions. We examine the evidence in the light most favorable to the prosecution, which won the verdict. He argues first that we must examine the actions of Steven Lloyd Corporation, for which he received all four of his convictions, apart from the actions of the other companies, and, thus viewed, there is insufficient evidence to support the jury's finding of a fraudulent scheme. Only by looking at the overall pattern of conduct of all the companies, the argument runs, is there sufficient evidence to support the finding of intent to defraud.

We reject this argument. The jury could properly consider the actions of all of the companies in assessing whether Steve Thornberg had an intent to defraud. The evidence tended to show that Steve knew about his brother's business affairs both before and after they did business together as Steven Lloyd Corporation. Indeed, Steve was one of the incorporators and directors of a similar company, American Screener Corporation, which was in business before the period covered in the indictment. There was also specific evidence of Steve's intent to defraud supporting each count on which he was convicted.

## III.

We group Steve Thornberg's final three arguments together, for none is meritorious, and each requires only cursory discussion.

■ 1. He argues that the Court erred in excluding the testimony of one of his witnesses, Thomas Hunziker, a lawyer who had represented Steve in a civil lawsuit in 1976. The suit was on an indemnity bond that Steve allegedly had signed; Jim Thornberg had retained Hunziker to represent Steve in that matter because, as he supposedly explained to the lawyer, "['Steve is] not responsible [for the bond]. I want to make sure that he's not stuck with this thing, that I am,['] or words to the effect [Jim] was admitting that he was the one who had got his brother in trouble." Tr. XVIII:2781. The indemnity company eventually dropped the suit against Steve because it determined that his signature on the bond had been forged. Steve wanted to introduce this evidence to show that Jim might have forged Steve's name on documents relating to this prosecution and that Jim exercised a strong influence over Steve. The Court excluded this proffer because it was remote in time and completely unrelated to the transactions at issue, it was prejudicial to Jim Thornberg, and Steve had other evidence by which he could show that his name had been forged and that Jim dominated him. We find no abuse of the Court's broad discretion in this evidentiary ruling.

■ 2. Steve appeals the Court's refusal to present to the jury one of his instructions on good faith. The refused instruction was requested in addition to another good-faith instruction that was given to the jury, which is described in Steve's brief as "a standard instruction, concededly suit-

able for most cases." Br. of Appellant, No. 87–5089, p. 46. The reason it was not adequate in this case, he argues, is that the proof showed he could be held responsible only for the actions of one company, not the several that his codefendants were responsible for, so the jury should have been instructed that writing aggressive letters to creditors and filing for bankruptcy with respect to one company are not *per se* fraudulent. We reject this argument. The indictment alleged that he was part of a fraudulent scheme embracing all of the companies, and the proof tended to show his awareness of and participation in the overarching scheme. In addition, the instruction given adequately stated the law, and we do not think Steve was entitled to the personalized, pointed instruction he requested.

■ 3. Finally, Steve argues that the government unreasonably delayed indicting him, and this so prejudiced his ability to defend the case that we should reverse his convictions. (This is not a statute-of-limitations argument; Steve does not claim that the prosecution was time-barred.) The last count naming him described conduct occurring in 1982, and the indictment was not returned until March 1986. But the scheme alleged in the indictment continued until 1984, and, even though Steve may not have participated in the scheme after 1982, it was permissible for the government to continue developing evidence against his codefendants who continued the fraud. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In addition, Steve has not pointed out what specific prejudice he incurred as a result of the delay. See *United States v. Carlson*, 697 F.2d 231, 236 (8th Cir.1983).

Steve Thornberg raises other issues in a *pro se* brief filed in addition to his lawyer's. We find no merit in those points.

### IV.

■ Jim Thornberg appeals the Court's refusal to exclude certain evidence as a sanction for the prosecution's violation of Fed.R.Crim.P. 16. The government conceded that it broke the Rule by not disclosing until September 17, 1986, that on September 3, 1986, it had obtained a copy of a deposition of Jim and Steve Thornberg made during the bankruptcy of Steven Lloyd Corporation. When the government sought to introduce this testimony, Jim moved that it be excluded, arguing that the deposition would contradict his theory at trial that Steve Thornberg controlled Steven Lloyd Corporation, and since he was not apprised that the government might use it until after he had unveiled his trial strategy, introducing the deposition would unfairly prejudice him.

The District Court heard the motion and read the transcript of Jim's opening statement to determine how seriously the deposition would contradict his trial strategy. After considering the motion for one week, the Court denied it. Its grounds were (1) the defendants had received notice of the evidence one week into the trial, three weeks before it would be introduced, and (2) the portions of the deposition introduced were not inconsistent with Jim's opening statement. We agree with this ruling. The Court has broad discretion in fashioning sanctions for violations of Rule 16, see Fed.R.Crim.P. 16(d)(2), and it did not abuse that discretion by refusing to exclude the deposition here.

### V.

Finding no error in the judgments of the District Court, we affirm.