# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1073

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff/Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Arkansas |
| | * | |
| LARRY D. ROGERS, | * | |
| | * | |
| Defendant/Appellant. | * | |
| | * | |

_____

Submitted: May 11, 1998
Filed:    July 24, 1998

_____

Before BEAM and MURPHY, Circuit Judges, and MELLOY,[1] Chief District Judge.

_____

[1] The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

Melloy, Chief District Judge.

Larry D. Rogers was tried and convicted of possession of methamphetamine and marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[2] sentenced Rogers to 235 months custody to be followed by five years supervised release. Rogers challenges the issuance and execution of the search warrant in this case, failure to grant his severance motion, sufficiency of the evidence, and a sentencing issue. We affirm.

## I. Background

In February of 1997, a confidential informant named Mark Gamble told the Fort Smith police that Larry Rogers was selling methamphetamine and marijuana on property that Rogers owned in rural Sebastian County, Arkansas. During the ensuing investigation, Narcotics Detective Sergeant Grizzle of the Fort Smith Police Department and Investigator Hollenbeck of the Sebastian County Sheriff's Department located the rural acreage where they believed that Larry Rogers lived. Two motor homes were located on this acreage, as well as a metal barn that was partially under construction. By examining tax records, the investigators determined that Rogers owned a motor home, and they assumed that one of the two motor homes on Rogers' property belonged to him. (They were unable to determine which of the two motor homes was his because they were unable to see a license plate tag or a VIN number on either of the motor homes.)

_____

[2] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

2

Hollenbeck and Grizzle then gave Gamble $50 in cash with which to buy drugs from Rogers. Gamble testified at trial that he went to Rogers' property to buy drugs on the evening of April 29, 1997, and that he talked with Rogers and two other men in one of the motor homes (which the police later named "Motor Home #1"). After the other men had left, Gamble asked Rogers if he could buy some marijuana from him and Rogers said that he could, but that he should meet Rogers in the driveway. When Gamble met Rogers in the driveway, Gamble bought a quarter ounce of marijuana from Rogers for $25. Hollenbeck and Grizzle included information about this transaction in the search warrant that they prepared. The court then issued the search warrant.

When the search team arrived at Rogers' property on the afternoon of April 30, 1997, nobody was there. The officers entered Motor Home #1 and found clothes, dirty dishes, and bedding inside the motor home, indicating someone was living there. A package of methamphetamine was found in the cushion of a chair. In the same chair, officers found a loaded Smith and Wesson .44 magnum revolver and holster. On a kitchen cabinet near where the revolver and methamphetamine were seized, officers found a set of triple beam scales. Elsewhere in the motor home, officers found a loaded 12-gauge, single shotgun and a loaded .22 semi-automatic rifle.

In addition to the methamphetamine found in the cushion of the chair, officers found other drugs in Motor Home #1. Inside a metal can, there were large plastic bags of marijuana. Inside a red and white thermos, there was more

3

methamphetamine. Inside a brown leather shaving kit bag, there was over $32,000 in cash, methamphetamine, and a set of small digital scales. In total, officers found about 1.44 pounds of methamphetamine and over 3 kilograms of marijuana.

The investigators searched the drawers of a desk in Motor Home #1, where they found two documents with Larry Rogers' name on them: (1) a document entitled "Hourly Vacation," which was dated 3-31-97 and which showed Rogers' vacation schedule, and (2) an envelope from the circuit clerk's office addressed to Larry Rogers, which contained his divorce decree. Moving outside of Motor Home #1 to the barn, officers found a small blue pipe which they believed had been used to smoke marijuana, as well as a syringe. They found nothing inculpatory in Motor Home #2.

After the search concluded, the officers were able to determine that Motor Home #1 was registered to Glen Woolsey and that Motor Home #2 was registered to Larry Rogers. Woolsey testified at trial that he had purchased Motor Home #1 in September of 1996, and that he had taken it to Rogers' property in October of 1996. Woolsey said that he and other people drove the motor home a small amount during the next seven or eight months, but that it was usually parked next to the barn on Rogers' property. Woolsey himself did not stay in the motor home when it was on Rogers' property, although he visited Rogers often. Woolsey also said that he had seen Rogers' girlfriend prepare food on the stove in Woolsey's motor home.

4

## II.  Discussion

Rogers argues that (1) the district court erred in denying his motion to suppress; (2) the district court erred in denying his motion to sever the two drug offenses from the firearm offense; (3) the district court erred when it applied an enhancement for possession of a firearm during a drug offense; and (4) there was insufficient evidence to support the jury's verdict.  We examine each of these arguments in turn.

### A.  Motion to Suppress

The main issue in this appeal is whether the search warrant described the directions to Rogers' property with sufficient particularity.  Rogers claims that the search warrant was insufficient because it did not describe the final turn that the officers had to make before reaching Rogers' property.  If the officers followed the directions on the search warrant, Rogers asserts, they would have exhausted the directions on the warrant, yet there would have been nothing in sight to search.  Because the search warrant used to obtain the evidence failed to particularly describe the place to be searched, Rogers argues that the evidence seized through the search should have been suppressed.

The government concedes that the affidavit omitted the final turn that the officers had to make in order to find Rogers' property, and that without this final direction, the search warrant could have led officers to either the Rogers property or the neighboring Crook property.  Although so conceding, the government asserts that the search warrant was still sufficiently particular to enable the officers to find Rogers' property with reasonable effort and without a reasonable probability that another place might have been mistakenly searched.

The Fourth Amendment states that "no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  In the Eighth Circuit, the test for determining the sufficiency of the description is whether the place to be searched is described with sufficient particularity as to enable the officer executing the search warrant to locate and identify the place to be searched with reasonable effort, and without a reasonable probability that another place might be mistakenly searched.  *United States v. Valentine*, 984 F.2d 906, 909 (8ᵗʰ Cir. 1993), *citing United States v. Gitcho*, 601 F.2d 369, 371 (8ᵗʰ Cir. 1979), *cert. denied*, 444 U.S. 871 (1979).  We will uphold the district court's denial of a motion to suppress unless it rests on clearly erroneous findings of fact or reflects an erroneous view of the applicable law.  *United States v. Berry*, 113 F.3d 121, 122 (8ᵗʰ Cir. 1997).

The district court[3] found that the directions on the search warrant did indeed omit the last turn that the officers had to make before finding Rogers' property, and that because of this omission, the directions could have led officers to either the Rogers property or the Crook property.  The district court went on to find that even though the directions led to two different entrances to two different properties, the directions were not unduly confusing because the Crook property had a new white home and chicken broiler houses, which did not fit the description in the affidavit. In contrast, the other entrance to the Rogers property did fit the description.  Thus,

---

[3] The district court adopted the Report and Recommendation written by the Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas.

6

because the Crook property could not be confused with the Rogers property, the description in the search warrant was sufficiently particular to locate and to identify the premises to be searched: the officers executing the warrant could rely on the description to find the Rogers property with reasonable effort and without any reasonable probability of mistakenly searching the Crook property.

We have reviewed this finding and hold that it is not clearly erroneous and that it does not reflect an erroneous view of the applicable law. Thus, the district court did not err in refusing to suppress the evidence seized through the execution of the search warrant.

### B. Motion to Sever

Rogers next argues that the court erred when it refused to sever the felon-in-possession charge from the drug charges. He claims that he was irreparably prejudiced when all of the counts were tried together because evidence of a prior conviction is the "kiss of death."

If this issue is preserved for appeal, we review whether the district court abused its discretion and thus prejudiced Rogers' right to a fair trial. *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994). If this issue is not preserved for appeal, the standard of review is plain error. *United States v. Bordeaux*, 84 F.3d 1544, 1547 (8th Cir. 1996). Under a plain error standard, a defendant must show prejudice affecting his substantial rights and an extraordinary reason to reverse, in addition to an abuse of discretion. *Id.*

The government contends that Rogers did not preserve this issue for appeal

because he failed to renew his severance motion at the close of either the government's case or the defendant's case. Contrary to the government's assertion, "[t]his circuit has rejected the rigid requirement that the defendant must renew his severance motion after the close of the government's case, and instead we consider the actions taken by the defendant in light of the purposes for requiring the motion's renewal." *United States v. Dobin*, 938 F.2d 867, 869 (8th Cir. 1991), *citing United States v. Thornberg*, 844 F.2d 573, 575-76 (8th Cir. 1988), *cert. denied*, 487 U.S. 1240 (1988). Instead of adhering to a rigid rule, we examine whether the two main concerns underlying the rule have been satisfied. These concerns are "(1) the appellate court's practical ability to determine whether the appellant knew of the error and consented to it; and (2) the unfairness of reversing the trial court on an issue that it did not have the opportunity to consider." *United States v. Westbrook*, 896 F.2d 330, 337 (8th Cir. 1990). This means that even if Rogers failed to renew his motion for severance, he may not have waived his objection, so long as he did not consent to the error and so long as the district court had the opportunity to consider his motion with full knowledge of the situation.

The record before us fails to reveal whether Rogers did in fact renew his pretrial severance motion at the close of the government's case, at the close of the evidence, or at the time evidence was introduced. The record also fails to indicate whether the evidence admitted at trial was materially different than what Rogers anticipated the evidence would be when he made his pretrial motion to sever. *Compare Dobin*, 938 F.2d at 869 ("When a motion is made based on facts believed to exist, and there is no material change with respect to what happens at the trial, then a renewed motion for severance is not necessary."). However, even giving the

8

defendant the benefit of reviewing the decision under an abuse of discretion standard, we find that the district court did not abuse its discretion.

Rogers alleges that he suffered substantial prejudice when the jury learned that he had already been convicted of two felonies, and that the district court thereby abused its discretion in refusing to sever or to bifurcate the felon-in-possession count. The government argues that the district court did not abuse its discretion in refusing to sever this count because the parties stipulated that Rogers had been convicted of two felonies, and this stipulation removed any testimony on the underlying felonies. The government relies on *United States v. Brown*, 70 F.3d 979 (8th Cir. 1995) to support this argument, asserting that *Brown* stands for the proposition that a stipulation of the felony convictions removes any chance of prejudice because there is no discussion of the underlying prior felony convictions.

In *Brown*, we reviewed a district court's denial of a motion to sever an unlawful firearms possession charge from bank robbery charges. *United States v. Brown*, 33 F.3d 1002, 1005 (8th Cir. 1994); *see also United States v. Brown*, 70 F.3d 979, 980 (8th Cir. 1995) (appeal after remand, affirming denial of motion to sever). We held that the defendant could not demonstrate prejudice from the district court's failure to sever because the stipulation admitted into evidence at trial did not disclose the nature of the defendant's prior felony convictions, even though it revealed that he had been convicted of five felonies. *Brown*, 70 F.3d at 980. While *Brown* thus stands for the principle that a defendant may not suffer prejudice if the nature of the underlying felonies is not revealed, this holding has limited relevance in Rogers' case. In contrast to *Brown*, the stipulation in Rogers' trial *did* disclose

9

information about the nature of Rogers' prior convictions.  The district court specifically instructed the jury that:

> The United States of America, and the defendant, Larry D. Rogers, stipulate that Larry D. Rogers has two (2) felony convictions in the State of Oklahoma -- (1) a grand larceny in 1981, and (2) a larceny of merchandise from a retailer in 1982.  Each crime is punishable by imprisonment for more than one year under the laws of Oklahoma.

The issue in Rogers' case thus becomes whether the district court abused its discretion and prejudiced Rogers' right to a fair trial when it refused to sever or bifurcate the counts, where the stipulation read to the jury disclosed the nature of the underlying felony offenses.  *Cf. United States v. Williams*, 923 F.2d 76, 78 (8th Cir. 1991) (per curiam) (no prejudice when government read a stipulation stating that defendant had been convicted of three prior felonies, but contained no other information about those felonies).

We analyzed a similar issue in *United States v. Caldwell*, 97 F.3d 1063 (8th Cir. 1996), where defendant Caldwell appealed the denial of his motion to sever his unlawful firearms possession count from his drug charges.  Caldwell's jury, like Rogers' jury, was told the nature of the underlying offenses, the date of the prior convictions, and the length of the sentence.  97 F.3d at 1068.  After the government read portions of the court record that contained this information, the court gave a cautionary instruction which limited the jury's consideration of Caldwell's two prior felony convictions to the unlawful firearms possession count.  *Id.*  We held that this method of proof was sufficient to limit any prejudice that Caldwell may have suffered, despite the fact that it also disclosed the nature of the underlying

10

convictions and the sentence received.[4] *Id.*

In examining whether Rogers suffered prejudice, we first note that Rogers agreed to the stipulation disclosing the nature of his underlying felonies. Additionally, the district court allowed no testimony on the underlying felonies and the court instructed the jury to consider the prior felony convictions only in determining whether Rogers committed the firearm offense. Because the district court thereby limited any potential prejudice that could have resulted from trying the drug counts with the firearms count, Rogers has failed to show that the district court abused its discretion and prejudiced his right to a fair trial when it denied his motion for severance.

## C. **Enhancement for Possession of Firearm**

Section 2D1.1(b)(1) of the Sentencing Guidelines Manual provides for a two-level increase in a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed." The government has "the burden at sentencing to show by a preponderance of the evidence that a weapon was present and that it is not clearly improbable that the weapon was connected with the criminal activity." *United States v. Belitz*, 141 F.3d 815, 817 (8th Cir. 1998), *citing United States v. Vaughn*, 111 F.3d 610, 616 (8th Cir. 1997) (applying § 2D1.1). The district court's finding that a defendant possessed a firearm for purposes of

---

[4] Even though we held that it was not unduly prejudicial to disclose the nature of the underlying convictions, we acknowledged that the government "could have reduced any possible prejudice even further by stipulating that [Caldwell] had been convicted of a [felony] without introducing any information about the nature of the prior offense or the sentence." *Caldwell*, 97 F.3d at 1068 n. 2.

§ 2D1.1(b)(1) may only be reversed if clearly erroneous.  *United States v. Payne*, 81 F.3d 759, 762 (8th Cir. 1996).

Rogers' base offense level was calculated at 34, and the district court increased this offense level by two (2) points pursuant to U.S.S.G. § 2D1.1(b)(1). The government argues that this two-level enhancement was supported by the evidence, while Rogers argues that there was not a sufficient nexus between the Smith and Wesson .44 magnum revolver and the drugs to warrant an enhancement. Even though the loaded revolver was found in the same chair as a package of methamphetamine, Rogers argues that there is no evidence that Rogers ever used the gun in connection with drug activity.

Application Note 3 to § 2D1.1 explains the rationale behind the two-level enhancement when it states the following:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, has an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, Application Note 3 (1995).  According to the plain language in Application Note 3, the two-level firearm enhancement should be applied "unless it is clearly improbable that the weapon was connected with the offense." *Id.*  To argue that it was clearly improbable that the gun was connected with the offense, Rogers cites the testimony of the government's confidential informant, Mark

12

Gamble, who said that he had traded the gun to Rogers in exchange for drugs. Rogers contends that this testimony shows that the gun was "used like cash" rather than used as a weapon, so the two-level enhancement under § 2D1.1(b)(1) is inapplicable. Rogers also highlights a comment made during his sentencing hearing, where the sentencing judge stated that the fact that the gun itself was traded for drugs seemed to implicate the gun in the drug transaction. Rogers argues that the nexus established by trading the gun for drugs is not the kind of nexus anticipated by the two-level enhancement in § 2D1.1(b)(1), and that the two-level enhancement he received was thus clearly erroneous.

We disagree with Rogers and find that obtaining a gun in exchange for drugs is sufficient to establish a nexus for a two-level enhancement pursuant to § 2D1.1(b)(1). An analogous issue was presented to the Supreme Court in *Smith v. United States*, 508 U.S. 223 (1993), where the Court held that a criminal who trades his firearm for drugs "uses" the firearm during and in relation to a drug trafficking offense within the meaning of 18 U.S.C. § 924(c)(1).[5] 508 U.S. at 239. In reaching this conclusion, the Court found that trading a gun for drugs falls within the plain language of the statute, so long as the trade occurs during and in relation to a drug trafficking offense. *Id.* at 240. The Court also noted the following:

> The fact that a gun is treated as an item of commerce does

---

[5] Section 924(c)(1) requires the imposition of penalties if the defendant, "during and in relation to any crime of violence or drug trafficking crime[], uses or carries a firearm." The Supreme Court explained in *Smith* that the statute requires the prosecution to show that: (1) the defendant used or carried a firearm, and (2) the use or carrying was during and in relation to a crime of violence or drug trafficking crime. 508 U.S. at 227.

> not render it inert or deprive it of destructive capacity.
> Rather, as experience demonstrates, it can be converted
> instantaneously from currency to cannon.
> We therefore see no reason why Congress would have
> intended courts and juries applying § 924(c)(1) to draw a
> fine metaphysical distinction between a gun's role in a
> drug offense as a weapon and its role as an item of barter;
> it creates a grave possibility of violence and death in
> either capacity.

*Id.* (internal citation omitted). Three years after *Smith*, we applied *Smith*'s holding to a case where the defendants had traded drugs for guns, rather than guns for drugs. *See United States v. Cannon*, 88 F.3d 1495 (8th Cir. 1996). We found that *Smith* applied with equal force in *Cannon* because the term "use" includes the action of "bartering," so when the *Cannon* defendants bartered their guns for drugs they effectively "used" their guns pursuant to § 924(c). 88 F.3d at 1509.

Applying the logic from both *Smith* and *Cannon* to the issue before us here, we hold that a drugs-for-gun trade is sufficient to warrant a two-level enhancement under § 2D1.1(b)(1). The government proved beyond a preponderance of the evidence that Rogers obtained the loaded .44 magnum revolver in exchange for drugs. Even though Rogers may have neither fired nor flaunted the gun when he later sold drugs, the fact remains that he traded drugs to get the gun and that he could have easily converted the gun from "currency to cannon." Such is the kind of increased danger of violence that § 2D1.1(b)(1) seeks to address, and such is why the district court did not clearly err in granting a two-level enhancement pursuant to § 2D1.1(b)(1).

In addition to proving that Rogers traded drugs for the gun, the government also proved by a preponderance of the evidence that the revolver was found in the same chair as some of the methamphetamine. Viewed either alone or in the context of the drugs-for-gun trade, this evidence proved a nexus between the weapon, the drug trafficking activity, and the defendant for purposes of a § 2D1.1(b)(1) enhancement. *See Payne*, 81 F.3d at 763, *citing United States v. Bost*, 968 F.2d 729, 732 (8th Cir. 1992). We therefore find that the imposition of the § 2D1.1(b)(1) enhancement was not clearly erroneous.

## D. Sufficiency of the Evidence

When reviewing the sufficiency of the evidence for a criminal conviction, "we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. We then uphold the conviction only if it is supported by substantial evidence." *United States v. Harrison*, 133 F.3d 1084, 1085 (8th Cir. 1998), *citing United States v. Black Cloud*, 101 F.3d 1258, 1263 (8th Cir. 1996). For evidence to be substantial, it "need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *Harrison*, 133 F.3d at 1085, *citing United States v. McGuire*, 45 F.3d 1177, 1186 (8th Cir. 1995). We will uphold the verdict if there is "an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt." *United States v. Dolan*, 120 F.3d 856, 868 (8th Cir. 1997), *citing United States v. Uder*, 98 F.3d 1039, 1045 (8th Cir. 1996).

Rogers contends that the evidence is insufficient to support his conviction

because the drugs were found in the motor home that Glen Woolsey owned, because other people besides Rogers had access to this motor home, and because the confidential informant who testified against Rogers had acted in hopes of securing leniency for his brother.[6]

After reviewing the record, we find sufficient evidence from which the jury could have chosen to believe Gamble's rendition of Rogers' participation, despite Gamble's alleged biased interest in helping his brother.[7] *See Uder*, 98 F.3d at 1045 (stating that decisions concerning witness credibility are to be resolved in favor of the jury's verdict).  Similarly, even though Rogers did not own Motor Home #1 and other people had access to it, the circumstantial evidence admitted at trial was more than sufficient to allow a reasonable jury to find guilt beyond a reasonable doubt.

---

[6] Larry Rogers' daughter and ex-wife testified that on the evening of April 29, 1997, Gamble was just leaving Rogers' property when they arrived.  Rogers' daughter asked her father if she could have $20 for a school trip, but he said that he "didn't have it on him."  Rogers' ex-wife testified that in her experience, Rogers would always give her or her daughter money when they needed it, so long as he had it.  The defense introduced this testimony as evidence that Rogers did not have $20 in cash on April 29, 1997, just moments after Gamble had supposedly given him $25 in cash.  The defense asserted that this testimony proved that Gamble had not purchased drugs from Rogers and that Gamble had fabricated the alleged drug buy.

[7] Gamble admitted that he had first approached Officer Grizzle because Gamble's brother, Mike, was working for Rogers in exchange for Rogers giving him methamphetamine, and that Gamble was concerned about his brother. Gamble also admitted that on April 29, 1997–the date when Gamble told investigators he had bought marijuana for $25 from Rogers–Gamble's brother was already incarcerated at the Sebastian County jail for drug charges.

16

Rogers' challenge to the sufficiency of the evidence underlying his convictions must therefore fail.

### III.  Conclusion

For the reasons stated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT