# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1974

_____

United States of America,    *
        *
    Plaintiff/Appellee,    *
        *
    v.    *
        *
Ann Marguerite Crumley,    *
        *
    Defendant/Appellant.    *

_____

No. 06-2708

_____

Appeals from the United States
District Court for the
District of Minnesota.

United States of America,    *
        *
    Plaintiff/Appellee,    *
        *
    v.    *
        *
David Jon Myers,    *
        *
    Defendant/Appellant.    *

_____

Submitted: May 15, 2007
Filed: June 12, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.
_____

JOHN R. GIBSON, Circuit Judge.

Ann Crumley and David Myers appeal their convictions, following a joint jury trial, in which they were convicted of conspiracy to distribute methamphetamine, 21 U.S.C. § 846, and aiding and abetting the possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1). In addition, Myers was individually convicted of possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Crumley was sentenced to 151 months' imprisonment. Myers was sentenced to 240 months. On appeal, they both argue that they were deprived of their constitutional rights to a fair trial when the district court[1] refused to sever their cases from each other. Crumley argues that the prosecutor engaged in numerous acts of misconduct in his opening and closing statements and that the district court erred, during sentencing, when it refused to grant her a downward departure, denied her a reduction for acceptance of responsibility, and found that she was ineligible for the safety-valve, USSG § 5C1.2. Myers argues that there was insufficient evidence to support his convictions. We affirm the convictions and sentences.

On February 7, 2005, police were surveilling the residence of Jennifer Zylka and Brian Rinker, whom they believed to be involved in narcotics trafficking. Rinker was observed leaving the residence in a 1999 silver Pontiac Grand Prix. Police followed Rinker to West Duluth, Minnesota, where he stopped at the residence of David Myers and Ann Crumley, who were also under investigation for narcotics trafficking. Police observed Rinker enter the residence for a brief time before returning to the Grand Prix. He drove away and they followed him out of

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

the area, then pulled him over, searched the car, and arrested him pursuant to a warrant. Police seized an ounce of methamphetamine and $2,900 from Rinker.

After Rinker's arrest, police executed a search warrant on the Crumley/Myers residence, which led to the arrest of both Myers and Crumley. In the cabinet of the master bathroom, police discovered a Brink's safe, which contained methamphetamine and approximately $51,000 in cash. Police also seized a Tech-9 semi-automatic pistol from a box inside a closet in the master bedroom. In the master bedroom itself, police found and seized a vacuum sealer, a box of small ziplock bags, and a digital scale, which Agent May testified are commonly used for packaging and distributing narcotics.

According to Agent May, Crumley admitted to possessing methamphetamine and directed him to a black briefcase in her Ford Taurus. He seized the briefcase along with its contents, which included methamphetamine, $8,240 cash in several white envelopes, and a digital scale. The briefcase also contained personal papers and receipts belonging to David Myers.

Agent May also testified that before he left the residence Crumley indicated a willingness to cooperate and assist with the investigation, but that she did not contact Agent May again until February 14, 2005, when Agent May ran into her on the street. Agent May asked why she had not contacted him and whether she still planned to provide assistance. Crumley told him that she was in contact with her drug source and expected the source to call soon. She received the call during their conversation and Crumley agreed to meet with the drug source to conduct a controlled buy under Agent May's supervision. She also agreed to allow May to search her vehicle, which contained $11,185 in cash, packaged in small white envelopes. The sting lead to the arrest of Jorge Sainz-Navarette and the seizure of over 314.5 grams of methamphetamine. In Sainz-Navarette's wallet, police seized

-3-

a scrap of paper with the name "Dave" written on it, along with a home telephone number registered to the defendant, David Myers.

## I.

### A.
### Crumley's Severance Arguments

Crumley argues that she was prejudiced by the district court's refusal to sever her trial from Myers's. Crumley moved for severance before trial, but she failed to renew that motion at any time thereafter. The threshold question is whether we should review the refusal to sever for an abuse of discretion or for plain error. "This circuit has rejected the rigid requirement that the defendant must renew [her] severance motion after the close of the government's case, and instead we consider the actions taken by the defendant in light of the purposes for requiring the motion's renewal."[2] United States v. Dobin, 938 F.2d 867, 869 (8th

_____

[2] The government contends that we should apply a rigid rule that plain error review always applies when a defendant "initially moves to sever, and then fails to renew his motion at the conclusion of trial." The government cites United States v. Mathison, 157 F.3d 541, 546 (8th Cir. 1998), where we stated, "Although [defendants] moved for severance during a pretrial hearing, they did not renew the motion at the close of the government's case or at the close of all of the evidence. Because of this omission, we review the denial of the motion for plain error only." See also United States v. Frank, 354 F.3d 910, 920 (8th Cir. 2004) (quoting Mathison, 157 F.3d at 546); United States v. Haskell, 468 F.3d 1064, 1070 n. 3 (8th Cir. 2006) (same), cert. denied 127 S. Ct. 2446 (2007). The more tolerant rule that we state in the text above, which considers whether a renewed motion was necessary in light of the purposes for requiring renewal, predates the decision in Mathison by a number of years. See United States v. Rogers, 150 F.3d 851, 856 (8th Cir. 1998); United States v. Dobin, 938 F.2d 867, 869 (8th Cir. 1991); and United States v. Thornberg, 844 F.2d 573, 575 (8th Cir. 1988). We do not believe Mathison, nor the cases that cite it, intended to create a new line of authority. Mathison does not engage in an analysis of the rule nor does it cite authority contradicting the rule. In fact, Mathison cites Rogers without disagreement as to the rule and without mentioning that Mathison was applying a

Cir. 1991). There are two purposes for requiring renewal of a motion to sever: 1) to show that the appealing party does not consent to the joinder, and 2) to give the trial court an opportunity to rule on the matter in its concrete form. Id. In this case, our primary focus is the second purpose. A renewed motion for severance is unnecessary when the facts raised by a defendant in his or her pretrial motion do not materially differ from the facts that are admitted at trial. However, when the trial produces a material change in the facts, "the motion to sever must be renewed so that the trial court can rule on the motion with the benefit, and in light of, knowledge of the true (and changed) situation." Id.

The district court was not given a chance to address Crumley's arguments because she never raised them before that court. On appeal, Crumley presents both new facts and entirely new legal arguments. In her pretrial motion, Crumley argued that she expected the government to introduce evidence of prior bad conduct by Myers, which, she argued, would prejudice her. She does not raise this argument on appeal, however. And, in fact, only one of the allegedly prejudicial bad acts was ultimately admitted at trial. Rather, Crumley makes two new arguments on appeal: that her fair trial rights were violated by the repeated attempts of Myers's counsel to shift the blame to Crumley, and that she was deprived of the right to testify in her own defense because, if she testified, she would face an accuser, Myers, possessing special knowledge as a result of their cohabitation. Just as the district court must be given the opportunity to reconsider a motion after the introduction of new and changed facts, it must also be given an

different rule. In light of these facts, we believe Mathison merely applied the rule in shorthand form under a set of facts where engaging in the extended analysis was unnecessary. This is supported by the cases that followed Mathison. See Haskell, 468 F.3d at 1070 n. 3 (noting that even if the court applied an abuse of discretion standard, the outcome of the case would remain unchanged).

opportunity to consider newly raised legal arguments. Therefore, we review for plain error.[3]

Under the plain error standard of review, the defendant must "show, in addition to an abuse of discretion by the district court, prejudice affecting his or her substantial rights and some extraordinary reason for us to reverse for such error despite [his or her] failure to raise the issue in the trial court." Dobin, 938 F.3d at 869 (internal quotation marks omitted). "Once defendants are properly joined under Rule 8, there is a strong presumption for their joint trial." United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004). To overcome the presumption, defendants must demonstrate severe or compelling prejudice as a result of the district court's refusal to grant severance. Id. "The mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials, as a co-defendant frequently attempts to point the finger, to shift the blame, or to save himself at the expense of the other." Id. at 1039-40 (internal quotation marks and citations omitted).

Crumley's first complaint, that Myers prejudiced her by attempting to shift the blame, is the same argument that was rejected in Flores. We also find guidance in Flores with regard to her second complaint – that she was denied her right to testify because she feared being cross-examined by Myers's counsel, armed with information only his client would know. Crumley was not deprived of her right to testify; she chose not to take the stand. A defendant does not have the right to prevent a co-defendant from eliciting damaging testimony from her on cross-

---

[3] Crumley argues that the district court's refusal to rule on Myers's pretrial motion to sever somehow obviates her duty to renew her own motion. She cites no case law for this argument, but states, "It is not possible to fully ventilate the issue of abuse of discretion if the district court's decision is unknown." But the district court's decision as to her arguments is known because the district court considered and denied her motion. Myers's pretrial motion alleges only prejudice to himself, not Crumley. The "ventilation" of those issues is irrelevant to Crumley's motion.

examination.  Id. at 1041.  This is not a danger that severance was designed to prevent.  Id.  It is simply another variation of the argument that she was prejudiced by Myers's attempt to blame her for the allegedly illegal activity.  Consequently, any prejudice Crumley may have suffered by her tactical decision not to testify fails to meet the high threshold required, under plain error review, to justify reversal.

## B.
## Myers's Severance Argument

We now turn to Myers's argument that separate trials were necessary in order for him to call Crumley as a witness.  We review his appeal for plain error because, although he raised the same argument in his pretrial motion, he now relies on facts not raised to the district court during the pretrial hearing. Dobin, 938 F.2d at 869.  The district court does not abuse its discretion in denying a motion to sever absent a "firm representation" that a co-defendant would be willing to testify on the defendant's behalf.  United States v. Blaylock, 421 F.3d 758, 767 (8th Cir. 2005), cert. denied, 546 U.S. 1126 (2006).  In his pretrial motion, Myers neglected to offer a "firm representation" that Crumley was willing to testify, but simply stated that he would call Crumley to testify and that her testimony would exculpate him.[4]  He offered no proof to the district court that Crumley agreed to testify on Myers's behalf.  On appeal, Myers points to the fact that Crumley did testify for him at the forfeiture hearing as proof that she would have testified at trial.  The fact of Crumley's willingness to testify at the forfeiture hearing is one the district court lacked when presented with the pretrial motion.  Thus, we review for plain error.

---

[4] The government contends that the lack of proof by the defendant is the reason the district court never ruled on the motion.  The district court's refusal to rule on the pre-trial motion is irrelevant given that we would apply plain error review even if the district court had ruled because Myers relies on facts not presented to the judge in his pretrial motion.

It is not enough "for a defendant to claim . . . that he needed a separate trial in order to call a co-defendant as a witness. He must show that it is likely his co-defendant would have testified and that the testimony would have been exculpatory." United States v. Mickelson, 378 F.3d 810, 818 (8th Cir. 2004). At the forfeiture hearing, Crumley testified that she tried to keep the drugs "away from the house as much as [she] could," and that although Myers "may have had an inkling," she never told him she was selling or dealing drugs. After considering the record, we do not believe that Crumley's testimony, at trial, would have exculpated Myers. Her attempts to distance Myers from the narcotics activity during the forfeiture hearing are directly rebutted by the numerous items of drug paraphernalia seized, in plain view, from their shared bedroom, by the $60,000 in cash found in the house, and by the substantial amount of methamphetamine found in the safe and in the car. Moreover, the district court was unconvinced by Crumley's testimony at the forfeiture hearing, which it found gave "new meaning to the concept of straining credulity." See United States v. Bradford, 499 F.3d 910, 917 (8th Cir. 2007) (credibility determinations made by the district court are "virtually unassailable on appeal"), cert. denied 128 S. Ct. 1446, (2008). Lastly, Rinker's testimony directly implicated both Crumley and Myers. Accordingly, the district court's refusal to grant severance was not plain error.

II.

Crumley argues that the prosecutor made an improper appeal to the jury, stated facts in opening and closing statements that were unsupported by the record, and inappropriately and inaccurately commented on the presumption of innocence. "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." United States v. King, 36 F.3d 728, 733 (8th Cir. 1994). "If we find the comments were improper, we consider the cumulative effect of the improprieties, the strength of the evidence against the

defendant, and whether the district court took any curative action." United States v. Milk, 447 F.3d 593, 602 (8th Cir. 2006). This analysis is altered in Crumley's case "because [she] did not object to the improper comments or move for a mistrial on this basis, and the district court took no curative action sua sponte." Id. Thus, we review for plain error, which means that we will reverse only if the error was plain and the district court's failure to take action seriously affected both the defendant's substantial trial rights and the "fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks omitted).

In his closing statement, the prosecutor said, "You got a glimpse into that world, and I submit to you it's not a very pretty picture. There's addiction, there's meth use, there's assault, threats, ah, firearms, there's children in harm's way. I mean, this is a very ugly business of drug trafficking." The prosecutor mentioned the presence of children in the home one more time: "We know Crumley lived [at the house where the drugs were seized]. . . . We know that, ah, she lived there with her 12- to 13-year-old son. We know there are other children in the house, or young adults." On the basis of these statements, Crumley contends the prosecutor was appealing to the jurors' consciences and asking the jury to convict Crumley, not on the basis of the evidence, but upon society's antipathy for illegal drugs and their effects on the community and upon the presence of children living around illegal drugs. But the prosecutor's comments were supported by the record and framed the evidence as presented by the witnesses. Moreover, these statements explain why the defendants would feel it necessary to possess firearms – for protection against the "ugly business of drug trafficking" and why they acted in a shroud of secrecy. The references to children were fleeting and represent only a few sentences of the entire closing argument. Authority relied upon by Crumley is inapposite. In Copeland v. Washington, 232 F.3d 969, 972 (8th Cir. 2000), the "improper remarks constituted the core of the prosecutor's [brief] closing." In

comparison, the remarks here were brief and merely framed facts presented by the witnesses. Thus, Crumley's right to a fair trial was not violated.

Crumley points to several statements by the prosecutor that she argues are unsupported by the evidence. A review of the record reveals that the prosecutor did not present facts unsupported by the evidence, but asked the jury to draw reasonable inferences from facts that were in evidence. A jury is permitted to draw, and counsel may suggest, inferences that are supported by the facts. See United States v. Frokjer, 415 F.3d 865, 874 (8th Cir. 2005). An inference is, after all, what circumstantial evidence suggests, and circumstantial evidence is just as probative as any other type of evidence, United States v. Maxwell, 498 F.3d 799, 801 (8th Cir. 2007). Accordingly, it was not improper when the prosecutor asked jurors to connect the large number of twenty dollar bills seized with the fact that narcotics trafficking is a cash enterprise. Nor was it improper when the prosecutor implied that the defendants may have hidden the key to the safe from police, when he said that the "key to that safe would be about an inch long, you'll hear. And very easy to get rid of, to hide, put in someplace in that house where [police] couldn't find it." The record supports the fact that the key was small. By inference, it would be "easy to get rid of" or to hide. Accordingly, the prosecutor's remarks were not improper.

During closing argument, the prosecutor referred to the gun seized as the "Intra-Tech machine gun," while, in fact, it was an Intra-Tech semi-automatic pistol. A single improper remark by the prosecutor about a peripheral fact – it would not have mattered, for the purposes of conviction, if Myers possessed a machine gun or a pistol – does not justify reversal under the plain error standard of review. United States v. Samples, 456 F.3d 875, 886 (8th Cir. 2006), cert. denied 127 S. Ct. 1162 (2007).

Finally, Crumley argues that the prosecutor inappropriately and inaccurately commented on the presumption of innocence. The prosecutor said,

> Presumption of innocence. Every person who's ever gone to trial in the United States of America starts with a presumption of innocence, and that is right. That is fair, that's what we should do. <u>But that presumption can be removed by fact, by proof.</u> In this case, I submit to you that we've removed it. You've heard it. All right.

(emphasis added). A presumption is not removed; it is rebutted. The presumption of innocence "remains with the defendant through every stage of the trial, most importantly, the jury's deliberations. It is extinguished only upon the jury's determination of guilt beyond a reasonable doubt." <u>Kellogg v. Skon</u>, 176 F.3d 447, 451 (8th Cir. 1999). It is improper to refer to the evidence as having removed the presumption. <u>Id.</u> at 451. The prosecutor in <u>Kellogg</u> made the same mischaracterization, but we held that the improper statement was not grounds for reversal because the district court remedied the error by giving a proper instruction, following closing arguments. <u>Id.</u> at 452. Likewise, in this case, before submitting it to the jury, the district court gave a proper instruction with regard to Myers's and Crumley's rights: "You know that the law presumes each defendant, and I instruct you that each defendant must be presumed to be innocent of the crime charged. . . . The presumption of innocence alone is therefore sufficient to acquit a defendant." Moreover, Crumley's attorney reminded jurors at the start of his closing argument that "regardless what the prosecutor has shown you on his machine here as what the law is, it's the judge's instructions that are the law you are to follow." The court's proper instruction of the law, enhanced by defense counsel's statement, cured the prosecutor's improper statement. Consequently, the error does not require reversal.

-11-

III.

We review de novo Myers's claim of insufficient evidence, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Whirlwind Soldier, 499 F.3d 862, 869 (8th Cir. 2007) (internal quotation marks omitted), cert. denied, 128 S. Ct. 1286 (2008). The conviction will be sustained unless no reasonable jury could have found the accused guilty of the crime charged. Id.

"To establish a conspiracy, the government must prove: (1) the existence of an agreement among two or more people to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) that the defendant knowingly joined and participated in the agreement." Id. An agreement may be either tacit or explicit. We consider evidence of association and acquaintance, but those facts alone are insufficient to establish a conspiracy. Id.

Myers and Crumley were more than associated and acquainted with one another; the undisputed evidence at trial was that they lived together. According to Agent May, police seized objects from Myers's bedroom commonly used for packaging and distributing narcotics, including a box of small Ziplock bags, a vacuum sealer, and a digital scale. To counter Myers's contention that he was unaware that Crumley was selling drugs out of his home, May testified that the vacuum sealer was "sitting out" in the open. Moreover, police found a safe, belonging to Myers, in the master bathroom that contained approximately $51,000 in cash, packaged in white envelopes, along with 170 grams of methamphetamine packaged in Ziplock bags. Agent May also testified that Crumley led them to $8,240 in cash, also packaged in white envelopes, and approximately 42 grams of methamphetamine, which was found in a briefcase with Myers's personal papers.

-12-

Brian Rinker testified about the inner workings of the conspiracy. He related that on the day of the search he arrived at the Crumley/Myers house, at the direction of his fiancee, Jennifer Zylka, in order to purchase methamphetamine from Myers. According to Rinker, Myers took him to the bathroom safe and gave him methamphetamine, but told Rinker to pay him later. Rinker testified that Crumley, not Myers, usually gave Zylka the drugs. On the occasion in question, however, Zylka specifically directed him to purchase the drugs from Myers without Crumley's knowledge because Myers would sell the drugs to them for less money. Myers argues that Rinker's instruction to avoid Crumley and purchase the drugs from Myers disproves the existence of a conspiracy because such conduct is more consistent with the actions of competitors than partners. But the mere fact that members of a criminal conspiracy may act, on occasion, with a personal interest instead of with a collective interest does not foreclose an agreement to cooperate. Myers's contention that he was uninvolved with Crumley's drug operation is undermined by the fact that Crumley's drug source had a piece of paper in his wallet with the name "Dave" written on it, along with the phone number to the Myers/Crumley house. Consequently, there is sufficient evidence to support the jury verdict that Myers was an intentional participant in an ongoing conspiracy to distribute methamphetamine.

Myers's conviction for possessing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) is also supported by sufficient evidence. To convict under § 924(c), "the jury must have found a nexus between the defendant's possession of the firearm and the drug offense," such as "evidence that the firearm was used for protection, was kept near the drugs, and was in close proximity to the defendant during drug transactions." United States v. Thorpe, 447 F.3d 565, 568 (8th Cir. 2006). Agent May testified that the Intra-Tech semi-automatic pistol was found in the closet of the master bedroom, near the safe in the master bathroom. A clip containing ammunition was found with the gun, and the gun was stored in the closet containing men's clothing. According to testimony,

the bulk of the drug activities appeared to have taken place in the master bedroom and master bathroom, which is where the government seized drugs, cash, plastic bags, a vacuum sealer, and a digital scale. There was also expert testimony that firearms are common tools for drug dealers because of the need to provide security against other drug dealers. The proximity of the gun to the safe, the drugs, and the cash, along with the expert testimony, support the jury verdict that the gun was used to further narcotics trafficking.

IV.

Crumley makes several arguments that the district court committed sentencing errors. We review the sentence imposed under an abuse of discretion standard. Gall v. United States, 128 S. Ct. 586, 594 (2007). There are two components to our review. We "must first ensure that the district court committed no significant procedural error. . . ." Id. Once we are satisfied that all of the procedural requirements were fulfilled, we review the sentence imposed for substantive reasonableness. See id. at 597; id. at 602-03 (Scalia, J., concurring). We begin with Crumley's arguments of procedural error.

A.

Calculating the advisory sentencing range is the first procedural step toward the imposition of a sentence. Id. at 597 (stating that improperly calculating the Guidelines range is one significant procedural error). Crumley challenges on two grounds the advisory sentencing range calculated by the district court.

First, she argues that the district court erred when it refused to reduce her offense level by two for accepting responsibility. "A decision by a district court as to whether a defendant has accepted responsibility is largely a factual question that turns on issues of credibility." United States v. Behr, 33 F.3d 1033, 1037 (8th Cir.

1994). Thus, we reverse only if the decision was clearly erroneous. Id. at 1037. "[A] reduction is [generally] not appropriate if the Government goes through the burden of proving its case at trial, unless the defendant was merely ascertaining the viability of an issue unrelated to [the defendant's] guilt, such as a constitutional challenge to a statute." United States v. Kendrick, 423 F.3d 803, 810 (8th Cir. 2005) (citing USSG § 3E1.1, cmt. n.2) A defendant who expresses remorse only at sentencing is generally not entitled to a reduction. USSG § 3E1.1, cmt. n.2. Although Crumley did not present evidence at trial, her attorney cross-examined witnesses and argued that the evidence was insufficient to support a verdict. She raised no constitutional challenge to the statutes under which she was indicted and first admitted to the offenses at her sentencing hearing. She has not presented evidence that shows the district court clearly erred in refusing to grant her an acceptance of responsibility reduction.

Second, Crumley argues she should have been granted a two level reduction based on the safety-valve provisions of USSG § 5C1.2. We review for clear error. United States v. O'Dell, 204 F.3d 829, 838 (8th Cir. 2000). The safety-valve provision allows for a defendant to be sentenced without regard to the statutory minimum sentence if several criteria are met. USSG § 5C1.2. The requirement at issue in Crumley's case is whether she demonstrated that she "truthfully provided to the Government all information and evidence the defendant ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Id. at § 5C1.2(a)(5). Crumley declined to proffer information to the government, so that it could evaluate whether she possessed relevant information about the narcotics trafficking. In fact, the only information she gave the government was a result of Agent May's chance street encounter with Crumley. Although she assisted in the arrest of Sainz-Navarette on that occasion, the circumstances suggest she did so only because Agent May interrupted her while she was preparing to purchase more narcotics. Moreover, the district court disbelieved Crumley's testimony at the forfeiture hearing that Myers was

uninvolved in the conspiracy. We give great weight to a district court's credibility determinations, see United States v. Bradford, 499 F.3d 910, 917 (8th Cir. 2007), cert. denied 128 S. Ct. 1446 (2008), and conclude that the district court did not err in finding that she was ineligible for the safety-valve provision. Consequently, the district court correctly calculated Crumley's advisory sentencing range as 151-188 months.

Third Crumley argues that the district court failed to consider relevant factors in coming to her ultimate sentence. A district court is required to consider all of the § 3553(a) factors, Gall, 128 S. Ct. at 597, but a mechanical recitation of those factors is unnecessary. United States v. Little Hawk, 449 F.3d 837, 840 (8th Cir. 2006). Although the district court may have said more in this case, particularly with reference to Crumley's argument that her sentence created an unwarranted disparity between her and co-conspirators Rinker and Zylka, we are satisfied that no error was committed. See Rita, 127 S. Ct. 2456, 2469 (2007). The district court was surely aware of the disparity it had created since it sentenced all those involved in the conspiracy. Such disparities generally are not unwarranted where one defendant cooperates and one does not, or where one defendant plays a greater role in the conspiracy than the other. See § 3553(a)(6) (instructing a district court to avoid disparities between defendants with "similar records" found guilty of "similar conduct"). Consequently, we are satisfied the district court knew of the disparity and considered it in reaching its ultimate sentence, committing no error.

B.

We now turn to the substantive component of our review and ask whether the 151 month sentence imposed by the district court is a reasonable one. Gall, 128 S. Ct. at 597. In our Circuit, a sentence imposed by the district court that falls within the advisory sentencing range is presumptively reasonable. United States v.

Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). Crumley makes no specific argument regarding the substantive reasonableness of her sentence; therefore, we hold that the district court did not err in imposing a 151 month sentence.

V.

For the above reasons, we affirm the judgment of the district court.

_____