# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2294

_____

David Kenneth Christian,                          *
                                                  *
                    Appellant,                     *
                                                  *  Appeal from the United States
         v.                                       *  District Court for the
                                                  *  District of Minnesota.
Lynn Dingle, Warden, Stillwater                   *
Facility, Minnesota,                              *
                                                  *
                    Appellee.                      *

_____

Submitted: June 11, 2009
    Filed: August 21, 2009

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Following a joint jury trial with his two codefendants in state court, David Kenneth Christian ("David") was convicted of two counts of second-degree unintentional felony murder and one count of first-degree assault. David filed a petition for a writ of habeas corpus in district court,[1] challenging the state trial court's decision to join him with his codefendants. The district court denied David's habeas petition. On appeal, David argues that he is entitled to habeas relief because his

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

joinder with his codefendants for trial and the state trial court's decision not to sever his trial constituted an unreasonable application of clearly established federal law as determined by the Supreme Court in *Zafiro v. United States*, 506 U.S. 534 (1993). We reject David's argument and affirm the judgment of the district court.

## I. *Background*

In late June 2000, Janea Wienand, Tanisha Patterson, and Janet Hall traveled with David, David's brother Scot Christian ("Scot"), and Vernon Powers to Austin, Minnesota, where Wienand and Hall looked for work as dancers at strip clubs. After spending two nights in Austin, the group traveled to St. Paul, Minnesota. Late that evening, the women traveled to Rochester, Minnesota, with Scot and Powers to search for strip clubs. Unable to find any strip clubs in Rochester, they returned to Austin, where Scot and Powers rented a room for the women at the Downtown Motel.

The women spent the next several days working as prostitutes. Scot and Powers told the women to report if they saw a customer with a large amount of money so that Scot and Powers could rob him. On the night of June 29, several men who were staying at the Downtown Motel visited the women's room. Wienand saw one of the men, Juan Ramirez, take a $100 bill from a red bandana that appeared to hold a large amount of cash. Wienand told the other women that they should inform Scot and Powers about the money so that they could rob Ramirez. David, Scot, and Powers arrived at the motel later that night. According to their plan, Wienand would knock on Ramirez's room door; when Ramirez answered, Scot and Powers would enter the room and rob him.

Wienand testified that, as the group prepared to leave Austin, David asked, "[Y]'all got the guns[,] right?" Wienand testified that she saw some handcuffs, two guns, two nylon stockings, and two masks on a bed in the motel room and that all three men were aware of these items. David drove everyone to Ramirez's room, backed into a parking space, and left the truck running. Scot and Powers, who were

wearing nylon stockings and masks over their heads and carrying guns, got out of the truck with Wienand. Wienand knocked on Ramirez's door and was invited to come in. After Wienand identified Ramirez as the man she had seen with the cash, she returned to the truck and Scot and Powers entered the room.

Scot approached a nightstand and asked for money. He told Powers to shoot Ramirez, who was screaming for help. Ramirez's 14-year-old nephew, who was present in the room, heard a total of eight or nine shots and saw Ramirez shot first and then saw shooting toward the direction of two other men in the room. Two men were killed and another was wounded. Scot and Powers returned to the truck following the robbery, and David drove away. After arriving in St. Paul on the morning of June 30, David wrapped the guns in a towel. Police arrested David, Scot, and Powers within 24 hours of the shooting.

David, Scot, and Powers were indicted in state court on two counts of first-degree premeditated murder, two counts of first-degree intentional felony murder, two counts of second-degree intentional murder, two counts of second-degree unintentional murder, and one count of first-degree assault. The State of Minnesota moved to join the three codefendants. David opposed joinder, but the trial court granted the State's motion. Before trial, the two first-degree premeditated murder counts against David were dismissed.

Powers was the only one of the three codefendants to testify at their joint trial. David was found guilty of two counts of second-degree unintentional felony murder and one count of first-degree assault and was sentenced to 493 months' imprisonment. Scot and Powers were found guilty of all the charged counts and were sentenced to consecutive life terms.

David challenged his convictions on direct appeal, arguing that the state trial court erred in joining him with his codefendants. The Minnesota Court of Appeals

concluded that joinder was proper and affirmed the convictions. *State v. Christian*, No. C5-01-1840, 2002 WL 31415382, at *1, 8 (Minn. Ct. App. Oct. 29, 2002). The state trial court subsequently denied two petitions for postconviction relief filed by David, and the Minnesota Court of Appeals affirmed each ruling. *Christian v. State*, No. A05-1240, 2006 WL 852136 (Minn. Ct. App. Apr. 4, 2006); *Christian v. State*, No. A04-281, 2004 WL 2221614 (Minn. Ct. App. Oct. 5, 2004).

David then filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, arguing, inter alia, that the state trial court abused its discretion in joining him with his codefendants. David asserted that he had newly discovered evidence in the form of post-trial affidavits from Scot and Powers. Scot stated in his affidavit that David was not involved in the planning or commission of the robbery and that Scot would have testified concerning David's lack of involvement had their trials not been joined. Powers stated in his affidavit that David was unaware of any illegal activity that occurred. The district court denied David's habeas petition, concluding that he "failed to demonstrate that joinder deprived him of a fair trial." We granted a certificate of appealability on the joinder issue.

## II. *Discussion*

Our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "limits the availability of habeas relief." *Bell-Bey v. Roper*, 499 F.3d 752, 755 (8th Cir. 2007). Under AEDPA, a writ of habeas corpus may be granted only if the relevant state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "We presume that the state court's findings of fact are correct, and the prisoner has 'the burden of rebutting the presumption of correctness

-4-

by clear and convincing evidence.'" *Barnett v. Roper*, 541 F.3d 804, 811 (8th Cir. 2008) (quoting 28 U.S.C. § 2254(e)(1)).

David argues that his joinder with his codefendants for trial and the state trial court's decision not to sever his trial constituted an "unreasonable application" of clearly established federal law as determined by the Supreme Court in *Zafiro*. "[U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal quotation marks omitted). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted).

In *Zafiro*, four defendants were tried jointly on federal drug charges. 506 U.S. at 536. The defendants repeatedly moved for severance on the ground that their defenses were mutually antagonistic, but the district court denied their severance motions. *Id.* The defendants were convicted, and three of them challenged the district court's denial of their severance motions on appeal. *Id.* at 536–37. The Supreme Court held "that the District Court did not abuse its discretion in denying [defendants'] motions to sever," explaining as follows:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. . . . When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a

defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, [481 U.S. 200 (1987),] less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

*Id.* at 539, 541 (internal citations omitted).

David contends that his joinder with his codefendants for trial and the state trial court's decision not to sever his trial constituted an "unreasonable application" of clearly established federal law as determined by the Supreme Court in *Zafiro* because the trial court denied him his Sixth Amendment right to call Scot and Powers to testify on his behalf. David's argument misconstrues *Zafiro*. The *Zafiro* defendants argued that they were entitled to severance because their defenses were mutually antagonistic, not because their joint trial deprived them of their Sixth Amendment right to call witnesses. *Id.* at 536–38.

David emphasizes that the Supreme Court stated in *Zafiro* that "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* at 539. But the Court did not elaborate on this statement, presumably because the defendants did not argue that their joint trial prevented them from presenting exculpatory evidence; additionally, the Court indicated that not every case in which "essential exculpatory evidence that would be available to a defendant tried alone [is] unavailable in a joint trial" results in prejudice, stating that "a defendant *might* suffer prejudice" in such a case and that "[t]he risk of prejudice will vary with the facts in each case." *Id.* (emphasis added). The Court also explained that "Rule 14 leaves the determination of risk of prejudice

and any remedy that may be necessary to the sound discretion of the district courts." *Id.* at 541. We hold that David's joinder with his codefendants for trial and the state trial court's decision not to sever his trial did not constitute an "unreasonable application" of clearly established federal law as determined by the Supreme Court in *Zafiro*.

David also relies on Eighth Circuit precedent in support of his position. But our precedent cannot "serve as a basis for any conclusion . . . about the reasonableness of the [state trial court's] decision under AEDPA" because "court of appeals decisions . . . cannot be 'clearly established Federal law, as determined by the Supreme Court.'" *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1)); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000) (stating that "§ 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence").

In any event, we have held that a "district court does not abuse its discretion in denying a motion to sever absent a 'firm representation' that a co-defendant would be willing to testify on the defendant's behalf." *United States v. Crumley*, 528 F.3d 1053, 1063 (8th Cir. 2008) (quoting *United States v. Blaylock*, 421 F.3d 758, 767 (8th Cir. 2005)). David emphasizes that his attorney informed the state trial court at a pre-trial hearing that Scot and Powers "intimated that they would be prepared to testify for [David] based upon the facts leading up to this incident," but this statement does not constitute a "firm representation" that they were actually willing to testify for David. *See id.* ("In his pretrial motion, [the defendant] neglected to offer a 'firm representation' that [his codefendant] was willing to testify, but simply stated that he would call [his codefendant] to testify and that her testimony would exculpate him. He offered no proof to the district court that [his codefendant] agreed to testify on [his] behalf.") (footnote omitted). Similarly, the post-trial affidavits of Scot and Powers do not support David's position because whether a state "court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States'" must be decided "in light of the record before it." *Nance v. Norris*, 392 F.3d 284, 293 (8th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(1)). Even under our precedent, David's claim would fail.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____