**IN THE COURT OF APPEALS OF IOWA**

No. 17-1160
Filed September 26, 2018

**JONATHAN ARMSTRONG,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.

_____

　　　　Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson, Judge.

　　　　A postconviction applicant appeals the district court order denying relief on his multiple felony convictions. **AFFIRMED.**

　　　　Brian S. Munnelly of Munnelly Law Office, Omaha, Nebraska, for appellant.

　　　　Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

　　　　Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Jonathan Armstrong is serving a prison sentence not to exceed twenty-five years after a jury convicted him of multiple offenses for his part in a violent home invasion. He now appeals the district court's denial of postconviction relief (PCR). He raises several claims of ineffective assistance of counsel, contending his criminal trial attorney should have (1) objected to the admission of cell phone records and a black bandana[1] bearing his DNA, (2) challenged the State's process for obtaining his DNA, (3) refrained from impeaching his own client, (4) produced an alibi witness at the criminal trial, and (5) called out prosecutorial misconduct. Armstrong also alleges he received ineffective assistance of appellate counsel on direct appeal. Finally, he claims he suffered prejudice from the cumulative impact of counsel's errors. Because Armstrong cannot show a reasonable probability of a different outcome even if counsel had followed the playlist developed in the PCR application, we affirm the order denying relief.

I.     **Facts and Prior Proceedings**

The jury reached its guilty verdicts after the following presentation of the facts. In the early morning hours of July 21, 2011, Armstrong and two accomplices, Alonzo Murray and Spencer Scott, broke into a Council Bluffs home looking for money or marijuana. According to Murray's testimony for the State, Armstrong and Scott covered their faces with bandanas. The intruders ordered

---

[1] The witness who found this item called it a bandana at the criminal trial; Armstrong refers to it as a "do-rag" in his PCR deposition. In our direct appeal decision, we defined "do-rag" as a kerchief worn to cover the hair. *State v. Armstrong*, No. 12-0426, 2013 WL 2107400, at *10 n.2 (Iowa Ct. App. May 15, 2013). In his trial testimony, accomplice Alonzo Murray differentiated between the two items, explaining: "Do-rag you put on your head. A bandana is like if you put it over your face."

four of the home's seven occupants out of their bedrooms at gunpoint and "pistol-whipped" a fifth victim. One occupant managed to escape and call 911 before returning to the house with a hammer to confront the assailants. The three intruders fled from the house, and Scott fired at an occupant as they left. A few blocks away, police arrested Murray—seizing his gun and cell phone. Murray identified Armstrong and Scott as his accomplices in the home invasion.

The State charged Armstrong with attempted murder, six counts of kidnapping in the second degree, six counts of robbery in the first degree, burglary in the first degree, and carrying weapons. Armstrong filed an alibi defense. But at trial, his alibi witness, Justine Dubois, failed to appear. Armstrong testified in his own defense, telling the jury he was with his girlfriend, Dubois, and not at the break-in.

On January 6, 2012, the jury returned guilty verdicts on first-degree burglary, first-degree robbery, five counts of kidnapping in the third degree, carrying weapons, and assault with intent to inflict serious injury (a lesser included offense of attempted murder). On direct appeal, our court affirmed Armstrong's convictions for burglary, robbery, carrying weapons, and assault with intent. *Armstrong*, 2013 WL 2107400, at *1. We reversed his kidnapping convictions based on his trial counsel's failure to object to a faulty jury instruction and remanded for retrial on those five counts. *Id.* On remand, the State dismissed the kidnapping counts.

In February 2014, Armstrong filed his PCR application, alleging ineffective assistance of both trial and direct appeal counsel. The district court denied relief. Armstrong now appeals.

## II.    **Scope and Standards of Review**

We generally review PCR proceedings for correction of legal error. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). But when the application alleges ineffective assistance of counsel, our review is de novo. *Allison v. State*, 914 N.W.2d 866, 870 (Iowa 2018).

## III.    **Discussion**

### A. *Ineffective Assistance of Trial Counsel*

As the PCR applicant, Armstrong must show, by a preponderance of the evidence, trial counsel breached an essential duty and prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lamasters*, 821 N.W.2d at 866. We will affirm the district court's PCR denial if either prong is unsatisfied. *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

On the breach-of-duty prong, we presume trial counsel was competent, and Armstrong bears the burden of proving the representation fell below "prevailing professional norms." *See Lamasters*, 821 N.W.2d at 866. Miscalculated trial strategies or simple mistakes in judgment generally do not rise to the level of ineffective assistance of counsel. *Id.* On the prejudice prong, Armstrong must demonstrate a different outcome would have been reasonably probable but for counsel's errors. *See id.* A reasonable probability is sufficient to undermine our confidence in the outcome. *Strickland*, 466 U.S. at 694. If Armstrong can only show the errors "conceivably" influenced the bottom line, the standard is not met. *See id.*

1.    **Cell Phone Records and Black Bandana**

Armstrong contends his trial counsel breached an essential duty by failing to object to evidence gathered from cell phone records and a black bandana found at the crime scene. In his issue heading, Armstrong claims his attorney "failed to object on foundation" but cites no rules of evidence in the body of his argument.

He starts with the cell phone records, alleging they were "highly incriminating and prominently cited" in our decision on direct appeal. Armstrong argues despite investigators' failure to recover the "family" cell phone he admitted to using on occasion, the State offered evidence of fourteen calls placed from the Armstrong phone to accomplice Murray's phone at the time they were fleeing the crime scene. Police seized Murray's phone and obtained provider records showing both phones were in Council Bluffs at the time of the home invasion. Because Armstrong cites no legal authority for his argument concerning trial counsel's handling of the cell phone records, we deem it waived. *See* Iowa R. App. P. 6.904(4), 6.903(2)(g)(3).

Moreover, as the PCR court noted:

> [Armstrong's] attorney throughout the case argued that the State's evidence was insufficient to show that Armstrong had possession of the phone and was at the crime scene. Armstrong's attorney made a number of foundation objections concerning the police investigation, and the State was required to provide further foundation for the officer's testimony. After the additional foundation by the state the evidence was admitted.

Armstrong established neither breach of duty nor prejudice in regard to the cell phone evidence.

Armstrong next alleges his trial counsel should have challenged the State's chain of custody for a black bandana found in a bedroom of the burglarized house. Despite a sweep of the house by crime scene technicians, the item was found by an eighteen-year-old resident after she returned home from being interviewed by police. The resident testified she immediately placed the item in a grocery bag and turned it into authorities. Criminalists were able to match DNA extracted from the bandana material to Armstrong's sample.

To establish a chain of custody necessary for admission of physical exhibits, the State bears the burden of showing the circumstances of evidence collection made it "reasonably probable that tampering, substitution or alteration of evidence did not occur." *State v. Biddle*, 652 N.W.2d 191, 196 (Iowa 2002) (quoting *State v. Bakker*, 262 N.W.2d 538, 542–43 (Iowa 1978)). The prosecutor satisfied that burden in regard to collection of the bandana. Although investigators did not spot the bandana on their initial sweep of the crime scene, a resident testified to finding the item after being interviewed by police and turning it over to an evidence technician just hours after the initial incident. Armstrong cannot show a breach of duty or resulting prejudice from counsel's disinclination to object to the chain of custody.

2. **Collection of DNA Evidence**

In another attack on the evidence taken from the bandana, Armstrong argues trial counsel was ineffective for not challenging the process by which authorities obtained a buccal swab for Armstrong's DNA when he was arrested on an unrelated charge in Nebraska. Armstrong argues the nontestimonial

identification procedure did not comply with Iowa Code section 810.8 (2011) and violated his constitutional right against unreasonable search and seizure.

While Armstrong was detained on a misdemeanor charge in Omaha, Council Bluffs police sought a court order from a Nebraska judge. The Nebraska judge granted the identification order under Nebraska law, and the order was executed according to Nebraska collection procedures. Unlike Iowa Code section 810.8, the Nebraska statute does not extend a right to counsel during the nontestimonial identification procedure. *Compare* Neb. Rev. Stat. § 29-3303 (2011), *with State v. Nagel*, 458 N.W.2d 10, 12 (Iowa Ct. App. 1990) (examining statutory right to counsel under section 810.8).

The PCR court did not embrace Armstrong's testimony that the sample was taken "by force," instead stressing: "At bottom, Armstrong's DNA sample was taken pursuant to a valid Nebraska Court order." Even if trial counsel had decided to contest Iowa authorities' choice to pursue the less-demanding Nebraska procedures, we agree with the PCR court's conclusion on prejudice: "Armstrong has not shown a reasonable probability he would have been successful in challenging the Nebraska order and nontestimonial procedures or that such a challenge would have resulted in the Iowa trial court excluding the evidence."

3.     **Impeachment of Client with Prior Offenses**

In his next claim of ineffective assistance, Armstrong complains trial counsel asked him highly prejudicial questions on the witness stand, "thus impeaching his own client and allowing improper cross examination to take place." On direct examination, Armstrong acknowledged he had been convicted of theft by deception, driving without a license, a drug charge, and attempted burglary. On

cross examination, the prosecutor probed for more details about Armstrong's prior offenses.

The PCR court described the defense strategy as an effort to "take the wind out of the State's sails" by revealing Armstrong's criminal past in his direct examination. On appeal, Armstrong contends his defense attorney was remiss in not filing a motion in limine or otherwise sorting out before trial which prior convictions would be admissible under Iowa Rule of Evidence 5.609. The State responds that filing a motion in limine would not have changed the outcome of the case—"at the very least, the defendant's prior felony convictions and prior crimes of dishonesty were admissible."

We agree with the State—given Armstrong's decision to testify on his own behalf, he cannot show prejudice resulting from counsel's strategy of taking the sting out of his criminal history on direct examination. *See State v. Jones*, 271 N.W.2d 761, 765 (Iowa 1978) (recognizing validity of defense tactic of bringing up prior convictions on direct examination). On appeal, Armstrong does not show that had defense counsel filed a motion in limine to exclude his non-impeachable prior offenses, a different outcome was reasonably probable.

4. **Alibi Witness**

Armstrong also contends his attorney was ineffective for failing to produce Armstrong's girlfriend, Dubois, as an alibi witness at trial. Armstrong asserts counsel failed to effectively subpoena Dubois, did not investigate her location, and should have established the witness was unavailable to allow submission of her prior deposition testimony. In response, the State argues counsel could not have

reasonably done more to produce Dubois, and the record does not establish counsel could have shown unavailability under the rules.

When Dubois did not appear to testify on behalf of Armstrong, trial counsel asked for a continuance. Counsel told the court he sent a process server out with a subpoena in case she needed to "get off work or something" and he was "at a loss as to why she is not here." The court denied the request for a continuance. Counsel then moved to read her deposition into the record. The court denied the motion because the defense had not shown the witness was unavailable. *See* Iowa R. Evid. 5.804(a)(5). In his deposition testimony for the PCR proceedings, trial counsel recalled Armstrong "didn't seem surprised that she didn't show up."

The PCR court rejected Armstrong's alibi-witness claim on prejudice grounds:

> Even assuming that Armstrong can show that his trial attorney was ill prepared for establishing that Ms. DuBois was an unavailable witness, he could not show a reasonable probability that it would have changed any of the verdicts.
> In some cases, alibi witnesses can be very persuasive. But the facts and circumstances in this case fail to demonstrate that Ms. DuBois would have been that type of witness. Ms. DuBois was Armstrong's girlfriend, not an unbiased observer. At her deposition on December 22, 2011, DuBois stated that she remembered that Armstrong specifically stayed with her the night of July 20 into the early morning of July 21, 2011. However, she could not remember when Armstrong was arrested. She admitted having a "bad memory." Despite being the source of what was perhaps Armstrong's best evidence in his defense, she never contacted the police after Armstrong was arrested to provide this information, nor did she contact Armstrong's attorney. Rather, it was Armstrong's attorney that contacted her.

We agree with the PCR court's rationale. Armstrong cannot show he suffered prejudice resulting from his counsel's handling of the alibi witness situation.

5.      **Prosecutorial Misconduct**

In his final claim of ineffective assistance of trial counsel, Armstrong focuses on his attorney's failure to challenge two instances of alleged misconduct by the prosecutor.[2]  First, Armstrong argues his lawyer should have objected when the prosecutor asked about the tattoo on his shoulder—the initials S.F.G.—during the direct examination of accomplice Murray and cross examination of Armstrong. Second, Armstrong contends counsel had a duty to object to the prosecutor's misstatements about the presumption of innocence and corroboration of the defendant's testimony during the State's closing argument.

We turn first to the tattoo questions.  In the direct examination of State's witness Murray, the prosecutor asked if his accomplice had a tattoo, and Murray confirmed the letters "S.F.G." were inked on Armstrong's upper arm.  The prosecutor also asked Armstrong about the tattoo on cross examination.  In the PCR hearing, Armstrong's counsel asserted the initials S.F.G. "supposedly stood for South Family Gang."  Armstrong argues his trial counsel was remiss in not objecting to these slightly veiled references to gang membership because they prompted the jury to convict him for reasons independent from his alleged involvement in the home invasion.  *See State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995) ("[E]vidence of gang membership and activity is inherently prejudicial. It appeals to the jury's instinct to punish gang members.").

---

[2] Our supreme court recognizes a distinction between misconduct and less egregious missteps by a prosecutor. *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016).  Prosecutorial misconduct marks an intentional breach or reckless disregard of clear standards of law or professional obligations. *Id.*  Prosecutorial error covers instances where the State's attorney uses reasonable care but exercises poor judgment or makes a mistake. *Id.*

The PCR court was not convinced the tattoo questions called for an objection or that the absence of an objection prejudiced Armstrong. The court noted "the evidence at trial shows the [S.F.G.] tattoo was used as a means of identifying Armstrong, and there was no reference to gang affiliation." In fact, the court emphasized "the record is devoid of any reference to gang or gang affiliation." On appeal, the State contends the tattoo references strengthened accomplice Murray's naming of Armstrong as a participant in the crimes—"[r]eference to a unique identifying mark, like a tattoo, is plainly relevant for the jury to understand the reliability of a witness' identification."

The tattoo testimony—billed as necessary to identify Armstrong as an accomplice—appears gratuitous given the other proof of the relationship between Armstrong and Murray. Armstrong acknowledged in his testimony that he "hung out" with Murray. But even if the prosecutor may have skated close to the line drawn in *Nance*, it was not crossed. *See id.* Without any direct mention of gangs or gang affiliation, Armstrong cannot show he was prejudiced by his trial attorney's reluctance to draw attention to the tattoo testimony. *See State v. Smith*, No. 16-0533, 2017 WL 6033880, at *6 (Iowa Ct. App. Dec. 6, 2017) (finding no abuse of discretion from admission of photograph of defendant's back, showing a tattoo featuring the words "Global Gangsta" because there was no mention of gangs during trial). Without a more explicit characterization by the State of Armstrong's gang affiliation, the isolated references to the tattoo do not rise to the level of misconduct necessary to render defense counsel ineffective for failing to object.

We turn next to Armstrong's claim concerning the State's closing argument, when the prosecutor highlighted Murray's testimony:

It was undisputed what you heard up there, unless there was something I didn't hear. I don't think the facts were challenged at all. What he said, his testimony was never challenged at all. Guess who he identified? He identified . . . the defendant. Immediately, presumption of innocence, ladies and gentleman is gone.

Armstrong also complains about the following statement by the prosecutor in rebuttal:

[Defense counsel] said Murray was not corroborated . . . . Tell me one corroboration for the defendant when he got up there. I would like to hear one thing, one thing he said that was corroborated.

Armstrong argues both passages were incorrect statements of law and cried out for objections by defense counsel. Armstrong contends the presumption of his innocence was not "gone" after Murray testified, but remained throughout the trial, including through closing arguments. He also maintains that a defendant's testimony, unlike that of an accomplice, requires no corroboration.

The PCR court concluded it was reasonable for defense counsel to refrain from objecting to the presumption-of-innocence comment, opining "[t]he statement by the prosecutor was nothing more than argument that the evidence had established guilt beyond a reasonable doubt." The PCR court also found it significant that the criminal court properly instructed the jury "[t]he presumption of innocence remains with the defendant throughout the trial unless the evidence establishes guilt beyond a reasonable doubt."

It should be said that the prosecutor's comment was a misstatement of the law on the presumption of innocence. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). This fundamental principle places the burden on the State to prove a defendant's guilt

beyond a reasonable doubt—while placing no burden on the accused. *See Presumption of Innocence*, *Black's Law Dictionary* (10th ed. 2014). "It is misconduct to misinform the jury that the presumption of innocence is 'gone' prior to the jury's deliberations. It strikes at the very heart of our system of criminal justice." *See People v. Cowan*, 214 Cal. Rptr. 3d 576, 582 (Ct. App. 2017) ("Even a novice prosecutor should know not to make such a fallacious statement to the jury."). The presumption of innocence "remains with the defendant through every stage of the trial, most importantly, the jury's deliberations. It is extinguished only upon the jury's determination of guilt beyond a reasonable doubt." *United States v. Crumley*, 528 F.3d 1053, 1065–66 (8th Cir. 2008); *accord People v. Conyac*, 361 P.3d 1005, 1029 (Colo. Ct. App. 2014) (disapproving of prosecutor's closing statement that defendant's "presumption of innocence is gone"); *State v. Trimble*, 371 N.W.2d 921, 926 (Minn. Ct. App. 1985) (rejecting prosecutor's "bursting bubble" theory, i.e., once sufficient evidence is produced to rebut the presumption of innocence, it vanishes, and holding defendant does not lose presumption of innocence until jury evaluates evidence).

Trial counsel had a duty to object to the prosecutor's mischaracterization concerning the presumption of innocence. Accordingly, the question becomes whether Armstrong established he was prejudiced by counsel's failure to do so. We agree with the PCR court that any error was remedied in this case by giving a proper instruction following closing arguments. *See Crumley*, 528 F.3d at 1066 (finding no prejudice where proper jury instruction "cured" prosecutor's improper statement on presumption of innocence). We find Armstrong suffered no prejudice from the prosecutor's misstatement concerning the presumption of innocence.

As for the prosecutor's rebuttal remark about corroboration of defendant's testimony, defense counsel testified in the PCR proceeding that he would have preferred for the prosecutor not to venture down that road, but did not believe much would have been accomplished by objecting. The PCR court credited defense counsel's position, as do we. While the prosecutor's rebuttal may have been inartful, it was somewhat invited by the defense closing and was not the kind of severe or pervasive misconduct that would require reversal. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

## B. *Ineffective Assistance of Appellate Counsel*

Taking a different tack, Armstrong switches his criticism to his direct-appeal attorney, contending the appellate defender was ineffective in failing to raise the claims set out in his postconviction application. Armstrong alleges "had the issues discussed above been raised on appeal, there is a reasonable probability that the outcome of the appeal would have been different." We find no merit in Armstrong's allegation concerning appellate counsel, who was successful in raising an issue leading to the dismissal of his kidnapping convictions. The appellate defender had no duty to raise additional claims of ineffective assistance of trial counsel without an adequate record to litigate them. *See* Iowa Code § 814.7. And, in fact, appellate counsel often provides better advocacy by being more selective in the briefing process. *Luke v. State*, 465 N.W.2d 898, 904 (Iowa Ct. App. 1990) ("Sound trial strategy generally dictates that only the most promising issues be raised on appeal.").

## C. *Cumulative Error*

As his final point, Armstrong contends if none of counsel's errors merits relief standing alone, they should be considered for their aggregate impact. He claims the cumulative effect of the alleged errors denied him a fair trial. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) ("Iowa recognizes the cumulative effect of ineffective assistance of counsel claims when analyzing prejudice under *Strickland*."). By our review, Armstrong has not shown he was prejudiced by his trial counsel's overall performance. The State offered strong evidence of Armstrong's participation in the home invasion, including the testimony of his accomplice and DNA evidence. Our confidence in the verdicts is not undermined by trial counsel's inability to deliver perfect representation. *See Strickland*, 466 U.S. at 694.

**AFFIRMED.**